ARKANSAS LIGHT & POWER COMPANY *v.* CULLEN.

Opinioin delivered January 26, 1925.

1. ELECTRICITY—NEGLIGENCE CAUSING DEATH—JURY QUESTION.—In an action for death from contact with a fallen live wire, evidence that defendant failed to equip its plant with kick-out switches to take care of its current in case of a fallen wire, and that a wire carrying 2300 volts was rotten and had been so for some time, and had fallen, and plaintiff's intestate was killed while trying to remove the wire from a place exposed to children, *held* sufficient to submit to the jury upon the question of defendant's negligence.

2. ELECTRICITY—DUTY OF ELECTRIC COMPANY TO INSPECT WIRES.—An electric company has the duty to inspect its wires at reasonable intervals, and to mend and keep them in repair.

3. ELECTRICITY—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.—Where intestate, in grasping the wire which killed him, had reason to suppose that it carried only small voltage, the question whether he was guilty of contributory negligence was properly submitted to the jury.

Appeal from Conway Circuit Court; *J. T. Bullock,* Judge; affirmed.

*T. D. Wynne* and *Strait & Strait,* for appellant.

Conceding the duties resting on electric companies with reference to constructing a system and the maintenance thereof, and that a *prima facie* showing of negligence was made out against the company when it was shown that decedent lost his life by coming in contact with the broken wire, yet the plaintiff is not entitled to recover in this action, since under the uncontradicted facts in proof, the decedent's conduct immediately preceding the accident, and the circumstances calling for the exercise of due care on his part, he was guilty of negligence *per se* in voluntarily exposing himself to a danger of which he had knowledge; and his negligence not only contributed to, but was the proximate cause of, his death. 119 N. W. 127; 128 S. W. 1062; 6 L. R. A. (N. S.) 290; 158 S. W. 200; 99 S. W. 1153.

*Edward Gordon,* for appellee.

As to the duty of an electric company with reference to placing its wires, maintaining proper insulation, making

reasonable and proper inspections, and exercising reasonable care to prevent accidents, see 9 R. C. L. 1211, § 20; Id. 1216, § 23; Id. 1217, § 25. It is admitted in this case that the wires were not properly insulated for 2300 volts of electricity in the first place, and it is in proof that the insulation on the wires in many places was rotten; also that the company had not equipped their plant either at Russellville or at Morrilton with kick-out switches. Contributory negligence was not pleaded, but only assumed risk, as a defense. Appellant was not entitled to have the question of contributory negligence submitted to the jury. 48 Ark. 461. And assumed risk was not involved in the case, since that grows out of contract relations. 110 Ark. 464; 92 Am. St. Rep. 319; 77 Ark. 372, 373-374; 135 Ark. 489. The facts speak for themselves in this case and cast upon the appellant the burden of showing that it was not negligent. 26 L. R. A. 812; 59 Ark. 215; 89 Ark. 538; 82 Ark. 424; 54 Ark. 621.

HUMPHREYS, J. This suit was instituted in the circuit court of Conway County against appellant by appellee, in the capacity of administrator of the estate of William Cullen, Sr., deceased, for compensatory and punitive damages on account of the death of said deceased, caused by coming in contact with an electric wire heavily charged with electricity, through the alleged negligence of appellant.

Appellant filed an answer to the complaint denying the material allegations thereof, and, by way of further defense, pleading contributory negligence on the part of appellee's intestate.

The cause was submitted upon the pleadings, testimony, and instructions of the court, which resulted in a verdict for compensatory damages in the sum of $3,000, from which is this appeal.

The court correctly instructed the jury upon the issue of negligence, contributory negligence, and measure of damages. While each instruction was objected to and

the objections properly preserved, it is not contended, in the brief of learned counsel for appellant, that any one of the instructions given by the court was erroneous and prejudicial to appellant's rights. The contention is made, however, that the court committed reversible error in refusing to give certain instructions requested by it, including its request for a peremptory instruction. We have carefully examined appellant's requested instructions Nos. 3, 4, 5, 6 and 7, which were refused by the court, and, in so far as they announce the law applicable to the facts in the case, they are substantially covered by the instructions which the court gave. We also think that the peremptory instruction requested by appellant was properly refused. We cannot agree with appellant that the undisputed evidence revealed that the death of appellee's intestate was not due to negligence on the part of appellant. On the contrary, it was shown that appellant did not equip its plant at Morrilton with kick-out switches, commonly used by such plants, to take care of the current on lines which should break and fall to the ground along the streets where they were stretched. Evidence was also introduced tending to show that the wire with which appellee's intestate came in contact had broken and fallen to the ground because it was rotten, and that it carried 2,300 volts of electricity, which rendered it dangerous and deadly to the touch. Evidence was also adduced tending to show that the wire remained in this condition for a considerable length of time before being repaired. The evidence detailed above was of a substantial nature, and sufficient to sustain the finding of the jury to the effect that the death of appellee's intestate was the direct and proximate result of the negligence of appellant.

"It is well settled that it is the imperative duty of an electric company not only to install proper appliances but also to make reasonable and proper inspection of such appliances and to use due diligence to discover and repair defects therein, and a failure to do so constitutes negligence." 9 R. C. L., § 25, p. 1217.

"From the very nature of its business, an electric company using highly charged wires owes the legal duty, irrespective of any contract relation, toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be, is liable to come into contact with the wires, to see that such wires are properly placed with reference to the safety of such persons," etc. 9 R. C. L. § 20, p. 1210.

It follows, of course, from the principle thus announced, that the wires should be inspected at reasonable intervals, mended, and kept in repair. *Haynees* v. *Raleigh Gas Co.*, 26 L. R. A., p. 812 (N. C.).

Neither can we agree with the contention of appellant that the undisputed evidence revealed that appellee's intestate was guilty of contributory negligence.

Appellee's intestate, in company with Peter Miller, late Sunday afternoon, June 10, 1923, discovered that the wire in question had broken and fallen to the ground. As they approached it, they saw some children near by, and appellee's intestate remarked that it was a house wire, and that he would remove it before some one was injured by it. The undisputed evidence reveals that house wires in the system carry only 210 volts of electricity, and will shock but not kill one if touched where insulated. The wire in question was insulated. Instead of being a house wire, carrying 210 volts of electricity, the wire in question was a primary wire, carrying 2,300 volts of electricity. Appellee's intestate reached up high and took hold of the wire where it was insulated, but, on account of the strong current, his muscles convulsed, thereby preventing him from releasing the wire. Before his companion could knock the wire out of his hands with a stick he was dead, and, when released from the wire, fell to the ground. It cannot be said that, under the undisputed evidence, appellee's intestate voluntarily put himself in contact with the live wire, knowing it to be charged with a deadly current, for there was some evidence tending to show that he thought, and had reason

to believe, that it was a house wire, carrying only a small voltage of electricity. In view of the disputed evidence in this regard, it was proper to submit the issue of contributory negligence to the jury.

No error appearing, the judgment is affirmed.