MISSISSIPPI VALLEY POWER· COMPANY *v.* HUBBARD.

Opinion delivered March 31, 1930.

*Hill, Fitzhugh & Brizzolara,* for appellants.

*J. F. O'Melia* and *G. L. Grant,* for appellee.

BUTLER, J.   The appellants, Isaac Lewis and James A. Lewis, were a partnership owning and operating a coal mine near Alix in Crawford County, Arkansas, which they had purchased together with the equipment from Ben and Howell Douglass. Over the shaft leading to the interior of the mine was erected what the witnesses have designated as a "tipple." This appears to be a structure composed of four large uprights slightly inclined toward the center from the perpendicular, braced

at intervals and extending upward a considerable number of feet. The manner of construction is not disclosed by the evidence or the purpose for which it was to be used, but from the photographs and references made by the witnesses we presume that it was a derrick-like structure used for affording means by which things might be raised or lowered into the mine. Within the tipple and near the shaft on sills laid upon the ground were three electrical devices called transformers. The mine was electrified, the electricity coming over the wires of the appellant, Mississippi Valley Power Company, strung on poles to a large pole about eighteen feet away from the tipple. From this pole the wires were carried into the tipple at a certain distance from the ground—one of the witnesses stated at about twelve feet from the ground—and fastened to one of the up-rights and there brought down the side of the up-right and connected with the transformers. One of these wires was called a high-tension wire, carrying a charge of about forty-four hundred volts. The other wires were called secondary wires, all of which were plainly in view. An iron pipe about $1\frac{1}{4}$ inches in diameter led horizontally from a boiler at a point outside the tipple to within the enclosure made by the same where it was attached by an elbow to a pipe of like dimensions extending downward through the shaft into the mine and there connected with other equipment, the pipe being used for the transmission of steam. This pipe was leaking steam at a point below the entrance to the shaft, and on the morning of the 22d day of September, 1927, Isaac Lewis, who was the foreman in charge of the operations of the mine, caused to be detached the pipe within the mine at a point about seventy feet below where it entered the shaft for the purpose of raising the pipe in order that the leak might be stopped. When this was done, the pipe was detached from the connections leading from the tipple outside, leaving about four feet of the horizontal pipe still attached to the elbow. The foreman then called to his assistance two miners and

one Andy Hubbard, and the four raised the perpendicular pipe several feet upward—estimated from three to seven feet—where it was tied to prevent its slipping down.. The purpose of this was to raise the pipe so the leak would be above the mouth of the shaft in order that it might be closed by a clamp. This work was to be done by Andy Hubbard who was a blacksmith, and the general repair man of the coal company.

The pipe was raised at about 7:30 or 8:00 o'clock in the forenoon. After it was raised and tied, the foreman, in the presence of the two miners who were helping him to raise the pipe, told Hubbard, who was to close the leak, to be careful with it and not to turn the pipe—that there was no danger if he did not turn the pipe. The elbow on the pipe at that time, and the piece of pipe about four feet long projecting therefrom were in an opposite direction and north from where the wires were installed on the south side of the tipple. After having raised the pipe and given the precaution to Hubbard, the foreman and his helpers descended into the mine where they remained. Hubbard also descended into the mine for some purpose and afterwards came back presumably to place the clamp on the pipe which was leaking. Later on, between 11:00 and 12:00 o'clock in the morning, the foreman, on coming to the bottom of the shaft, noticed a smoke and odor; and getting in the cage came up to the top where he discovered Hubbard lying dead, the pipe was turned with the projecting horizontal part against the wire and in an opposite direction from the point to which it extended when he had last seen it. An examination of the body of Hubbard disclosed the fact that the current of electricity had passed into his body at some place on his right shoulder or arm. Whether the point of contact was at the shoulder or below on the arm is not clearly shown by the testimony. The arm was burned to the bone, the current passing through the body and going out through his left foot, bursting the foot and burning off one of the toes. The wire with which the

pipe had come in contact was the high tension wire carrying about 4,400 volts of electricity, which was sufficient to, and doubtless did, cause instant death.

The testimony is in dispute regarding the manner in which the tipple was enclosed—whether it was boarded up or not. However, the evidence is clear that the wires, after they reached the inside of the tipple as they were brought down by the uprights, were not enclosed so as to prevent a contact with them and in this condition were dangerous. Hubbard was a man of mature years, having been in the employ of the appellants Lewis since 1924, and working in and around electrified mines since 1926. He was a blacksmith by trade, and, as before stated, he was the general repair man for the coal company. He had used electricity in connection with his work, and could not be said to be inexperienced with reference to the uses and the dangers attendant upon it.

It is insisted by the appellee, administratrix of the estate of Andy Hubbard, and the plaintiff in the action in the court below, that the defendant, Mississippi Valley Power Company, and the defendants Isaac and James A. Lewis, who were partners doing business under the name of Lewis Coal Company, were concurrently negligent in the installation and maintenance of the electric wires leading from the telephone post into the tipple and down one of its uprights, in that these wires were not properly insulated or guarded so as to prevent contact with them, and that this negligence was the proximate cause of the death of Andy Hubbard; and that the appellants were further negligent in not properly boarding up the tipple in order to prevent persons from coming in contact with the electric wires and devices installed within the same.

The defense of contributory negligence is interposed, and it is also contended by the appellant, Mississippi Valley Power Company, that whatever negligence might have existed with respect to the maintenance and placing of transformers and wires within the tipple, it is not responsible therefor, as its wires extended only to a pole

about 18 feet away from the place where the injury occurred.

It is not necessary for us to discuss or decide these questions, for the facts show that the injury and death of Hubbard was the result of a risk assumed by him. It is true employees do not ordinarily assume risks created by the negligent act of the master, and that he has a right to require of the master to provide suitable appliances and a safe place in which to do his work, and to do such is the clear duty of the master. *St. L. I. M. & S. R. Co.* v. *Touhey,* 67 Ark. 209, 54 S. W. 577, 77 Am. St. Rep. 109; *Pettus & Buford* v. *Kerr,* 87 Ark. 396, 112 S. W. 886; *St. L. I. M. & S. R. Co.* v. *Holmes,* 88 Ark. 181, 114 S. W. 221. But it is equally true that where the danger arising from the negligent conduct of the master is so apparent and obvious in its nature as to be at once discoverable to one of ordinary intelligence, an employee, by voluntarily undertaking to perform his work in such a situation, assumes the hazards which exempts the employer from liability on account of injury to the employee. *Wisconsin & Ark. Lbr. Co.* v. *McCloud,* 168 Ark. 352, 270 S. W. 599; *C. R. I. & P. Ry. Co.* v. *Allison,* 171 Ark. 983, 287 S. W. 197; *Ward Furniture Co.* v. *Weigand,* 173 Ark. 762, 293 S. W. 1002. Especially is this true where, in addition to the information he may gain by the casual exercise of his senses, he is expressly warned of the dangers incident to his situation. We think, in view of the age, occupation, and experience of the deceased, the readily discoverable nature of the dangers incident to his work and the warning he had received, that Hubbard assumed the risk incident to his work. *Hunt* v. *Dell,* 147 Ark. 95, 226 S. W. 1055; *River, Rail & Harbor Co.* v. *Goodwin,* 105 Ark. 247, 151 S. W. 267; *Williams Cooperage Co.* v. *Kittrell,* 107 Ark. 341, 155 S. W. 119.

The judgment of the court below is reversed, and the cause remanded.