ARKANSAS POWER & LIGHT COMPANY *v.* HUBBARD.

Opinion delivered May 19, 1930.

*Rose, Hemingway, Cantrell & Loughborough* and *Elmer Schoggen,* for appellant.

*Wills & Wills* and *W. R. Donham,* for appellee.

BUTLER, J. This suit was brought by the appellee, Nettie Hubbard, to recover damages for personal injuries received from contact with appellee's high-powered transmission line. There was a judgment in the court below for $5,000 in favor of the appellee, from which this appeal is prosecuted.

The testimony regarding the alleged negligence of the appellant in the maintenance of its lines is in conflict, that upon the part of the appellant tending to show

that the line was properly erected and maintained, the wires being the ordinary and suitable distance above the surface of the ground, having no slack except such as was necessary for the proper maintenance and operation of the lines. The testimony of witnesses for the appellee was to the effect that the wires had become slackened because of a leaning pole, to the extent that midway between the poles the wires extended downward from horizontal to within from nine feet to about eighteen feet above the ground surface, as estimated by the different witnesses for the appellee. It was testified that the proper height at which the line should have been strung and maintained was several feet higher. The line extended along the side of the highway between Little Rock and Conway. About three or four miles from North Little Rock, on this highway, the appellee and her husband owned a store which was twenty-four feet back from the transmission line of the appellant, and they were also engaged in running a filling station, the pumps and tanks of which were 9 feet 7 inches high, and immediately under the transmission line. Just preceding the accident the appellee's husband had cut a long pine pole to which, near the top, had been fastened a large rectangular metallic sign at right-angles to the pole. Two long wires were fastened to the sign for the purpose of holding the pole steady and guiding it while it was being set in a hole prepared between the two pumps. The appellee was called to assist in lifting the pole; she held one of the steadying wires and a youth the other. As the pole was being raised it fell against the transmission line, either the guide wire on the pole, or a portion of the sign coming in contact with the electric wire, resulting in a severe electric shock to the appellee, the extent of which injury was a matter of dispute.

The appellant insists that incompetent and prejudicial testimony was admitted; that the court erred in instructing the jury, and, lastly, that the court erred in refusing to instruct a verdict for the defendant, because the testimony was insufficient to support the verdict in

several particulars, which were alleged, the last of which is that the plaintiff was guilty of contributory negligence as a matter of law. It is unnecessary to discuss the assignments of error as presented, as we are constrained to the opinion that the evidence fails to support the verdict on the last ground mentioned, and that as a matter of law the plaintiff was guilty of contributory negligence, which bars a recovery.

All of the testimony tended to establish the fact that the electric wires were uninsulated, and the gasoline tanks and pumps were on a line immediately under the high transmission line of the appellant, and that a hole had been dug between the two and in line with them for the purpose of inserting the pole upon which the sign was fastened. According to the testimony of the appellee, the transmission line was not more than four to five feet above the pumps, and fifteen feet above the surface of the ground, and none of her witnesses put the height as over nineteen feet, so that the fact that these wires were uninsulated was readily discoverable from the place where the appellee was when engaged in helping to raise the pole, and she must be charged with knowledge of this condition. *Hines* v. *Consumers' Ice & Light Co.*, 173 Ark. 1103, 294 S. W. 409. The pole was of green pine, and, according to witness' own figures, when set, was at least twenty-two feet high exclusive of the part set in the ground. To sustain a pole of the height and weight of this one, it is probable that it was set in the ground not less than from two to three feet, so that the pole, at the time appellee was helping to raise it, must have been from twenty-four to twenty-five feet long. Whatever the length of the pole which they were attempting to raise, and whatever the height of the wire above the ground, it must have been true that the pole was much longer than the wires were high above the ground. The top of the sign was approximately five feet below the top of the pole, and this sign must have been as high or higher than the wires, for when "it swung around and hit the live wire,"

the current of electricity passed down into the body of the appellee; otherwise, the part of the pole above the sign would have touched the wire without damage, or the pole would have fallen under the wire without touching same. There were four people attempting to raise this long green pine pole, which must have been very heavy, to an upright position to be slipped into the hole in the ground which had been dug for that purpose—two men, a boy, and a woman, the appellee. It must have been apparent to any one of ordinary prudence that there was danger that the pole might fall before it reached the perpendicular, and was set in the ground, and that, if this happened, the pole would come in contact with the bare high-tension wires of the appellant. The appellee knew that the transmission wires were electric wires, but seeks to avoid the consequences of her negligent act by the statement that she did not know the wires were dangerous.

On January 18, 1900, in the case of *Danville Street Car Co.* v. *Watkins,* 97 Va. 713, 34 S. E. 984, where, as in the case at bar, the plaintiff sought damages for injuries occasioned by contact with an electric wire, in passing upon the question of plaintiff's contributory negligence, the Supreme Court of Virginia said: "Watkins states in his evidence that he knew nothing about electricity, and had never been in a power house, and did not know what effect it would have; that he did not know that contact with a wire charged with electricity would have any effect other than would be caused by contact with any other wire suspended over a street. We are indisposed to entertain at this day, when electricity is so generally applied as a motive power to machinery, a plea of ignorance of its dangerous properties." Three decades since the opinion in *Danville* v. *Watkins,* the use of electricity has become so general and wide-spread as to be a public necessity, and its properties are so universally known and recognized as to be a part of the common knowledge of the people, and it seems to be the general rule, where such is the case, all persons of ordinary intelligence and

experience will be presumed to know of its dangerous qualities. *Stackpole* v. *Pa. G. & E. Co.*, 181 Cal. 700, 186 Pac. 354; *Riggs* v. *Standard Oil Co.*, (Minn.) 130 Fed. 199; *Morrison* v. *Lee*, 16 N. Dak. 377, 13 L. R. A. (N. S.) 650; *Aljoe* v. *Penn. C. L. & P. Co.*, 281 Pa. 368, 126 Atl. 759.

In the case at bar the appellee is a woman of mature years and of sound business judgment, and at least of ordinary intelligence, for she is shown to be capable of managing the business in which she and her husband are engaged, and of earning more than $100 a month. Electricity is used in connection with her business; her home and place of business are lighted by electricity. Appellee must have known that the transmission line, before reaching her place of business, had served others along its route, and that it extended on beyond to a neighboring town carrying on its wires the energy sufficient to serve the needs of that community. Common experience and observation must have given her knowledge that these wires carried a considerable voltage, and that they were dangerous, and whether or not she knew of the dangerous character of the transmission wires, the true test is, what would one of ordinary prudence and caution be presumed to know with reference to such wires, and what would one of such caution and prudence do or refrain from doing under similar circumstances? *St. L. S. F. R. Co.* v. *Carr*, 94 Ark. 246, 126 S. W. 850; *Bulman Furn. Co.* v. *Schmuck*, 175 Ark. 442-50, 299 S. W. 765, 35 A. L. R. 1039.

Appellee cites and relies upon the recent case of *Arkansas Power & Light Co.* v. *Cates*, 180 Ark. 1003, 34 S. W. (2d) 846, where it is held that the plaintiff, in helping to hang a sign, detached a wire which had caught on the side of a wall by pulling it from the ground, and which came in contact with an electric wire causing his injury, was not guilty of contributory negligence. The facts in that case were essentially different from those of the case at bar, which, as stated by the court, were as follows: "Spradling, who was on the ladder near the sign,

was pulling the surplus wire through the vent, and, by reason of a crook on the end of the wire, it caught in the mortar joint between the brick. The lower end of the wire extended down to the ground, and appellee's intestate took hold of it to assist Spradling in pulling it through the vent. Spradling jerked the wire loose, and it fell over against the heavily charged electric wire, causing a short-circuit, the entire force of electric current passing through Cates' body, which caused his death." The mere statement of the facts marks the distinction, and that case has no application to the instant case, nor is it in conflict with our holding herein.

It is insisted, however, by the appellee that the appellant waived its defense of contributory negligence, because it asked that that question be submitted to the jury. We do not think this ground is well taken, for the reason that at the close of the testimony the appellant moved for a peremptory instruction, which motion was denied, the appellant objecting and saving its exceptions. This preserved all its rights in the case as to insufficiency of the testimony on any one of the defenses made by it, including that of contributory negligence, and a subsequent request for an instruction defining contributory negligence, and to submit that question to the jury was not a waiver of the request for an instructed verdict first made. Under the undisputed facts of this case, we are of the opinion that the appellee was guilty of negligence contributing to her injury, which bars recovery on her part. The judgment of the trial court is therefore reversed, and the cause is dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.

McHANEY, J., absent and not participating.