KURN, ET AL., TRUSTEES ST. L., S. F. R. CO., *v.* TEAGUE.

4-4249

Opinion delivered May 4, 1936.

*J. W. Jamison* and *Warner & Warner,* for appellants.
*Partain & Agee,* for appellee.

BAKER, J. This is an appeal from a judgment of the circuit court in the sum of $3,500 for injuries alleged to have been received by the appellee on July 13, 1934, while employed as a laborer with a bridge crew.

The view we have of this case is such that we think it unnecessary to set forth with any great detail the evidence in the case. For that reason only a sufficient statement will be made to present and settle the controverted propositions.

The foreman, Bradley, had his crew of bridge carpenters at work removing bridge timbers from a trestle on the main line of the St. Louis San Francisco Railroad Company, about two and a half miles north of Schaberg, a short distance south of the Winslow tunnel. These bridge timbers were rather large, being 8 x 16 inches and 28 feet long. They were to be shipped after the removal of the bridge and for that reason were loaded on a push-car to be hauled to the station or shipping point. This shipping point was perhaps about two or

three miles from the bridge, from which the timbers were taken, down a steep grade. The plan or system used to move these timbers was to load them upon a push-car which consisted of the frame-work and trucks, and this car was placed behind a motor-car, though not connected to it by ropes or other coupling. The motor-car had mechanical brakes, by which its speed could be controlled down a grade. Also, the push-car, which when loaded weighed about five tons, was to a certain extent controlled by the motor-car. The push-car had no brakes. The push-car consisted of two stringers resting upon the trucks and these stringers were joined by cross-pieces or timbers near the wheels or trucks, which were placed at each end. The cross-pieces or timbers joining the side-timbers or stringers extended out beyond the side-timbers so that the ends of them were about even or flush with the outside of the wheels. The distance from the rim of the wheel to the cross-piece on each side of the wheel was about six or seven inches. As a device for auxiliary braking, a piece of timber or scantling 2 x 4 inches and 7 feet long was used. It was prepared for use under the direction of the foreman Bradley. Preparation, however, consisted of driving a large nail—sixty-penny—or spike, near the end of the scantling, perhaps six or seven inches away from the end. In the use of this appliance or piece of timber with the nail in it, it was inserted or placed under the end of one of the cross-pieces in front of one of the wheels, the nail resting against the cross-piece so as to prevent the scantling or timber from going forward, then by lowering the other end the scantling was brought in contact with the wheel. The appellee, Nolen Teague, used this auxiliary brake on the evening of the 12th of July, the day before he was injured. He sat or rode on the frame-work on the push-car, or on the timbers loaded thereon, placed the piece of timber under the cross-piece of the frame-work of the push-car, lowered the timber until it came in contact with the rim of the wheel, and by the amount of pressure or weight applied thereon he governed the speed of the push-car down the grade. He was an experienced section hand, of such age and intelli-

gence, at least, to do his work as well as the average and ordinary man. He knew, as every railroad man must know, that the diameter of the wheels of the truck of this push-car, was greater at the flange or inside edge than at the outside edge and that as he held his auxiliary brake upon top of this wheel the probable tendency, on account of this difference in diameter, would be to move or gradually work the auxiliary brake toward the outside edge when it would have to be moved back to the flange or inside edge of the wheel.

The evidence is beyond dispute that push-cars of this type are not supplied with brakes; that the men who operate these cars devise or supply brakes when the occasion or necessity calls for them. The one in use on this occasion was of the type ordinarily used, such brake generally consisting of a piece of timber of this kind used, or a pole whereby the pressure could be applied so as to control the action or movement of the push-car.

In this case the nail or spike that was driven into the 2 x 4 piece of timber was driven nearly, but not quite through the scantling, and in the use of the timber as a brake the point of the nail came practically or almost directly over the top of the wheel upon which it was used as a brake. In the use thereof, the friction of the wheel grinding or rubbing against the bottom side of the timber gradually wore the timber down until the nail was exposed and the point of it came in contact with the wheel. An examination of the braking device, after the accident, disclosed this fact. The appellee testified that he heard the scratching or grating noise of the contact of the nail upon the rim of the wheel.

The evidence shows that at the time of the injury the push-car had been loaded with timbers weighing eight or nine thousand pounds; that it was going down grade behind, but not fastened to the motor-car. Two men were riding upon the push-car, some others upon the motor-car, having it under control. Sometimes the motor-car ran slightly ahead of the push-car. Whether this was occasioned by the speed of the motor-car or by reason of the retarding effect of the scantling brake upon the push-car, does not appear from the evi-

dence, nor does it make any difference, as there is no evidence that it ever was sufficiently far away as to cause any danger, or that this condition in any wise brought about the accident.

Teague testified that he could see the end of the scantling where it rested upon the wheel. He could, therefore, tell if the scantling were properly placed over the wheel or was working off to the side. His explanation as to how the accident occurred is that they were moving along about ten or twelve miles an hour. He was using this brake stick; that he could hear the grating sound of the nail upon the wheel and that suddenly the brake stick "was jerked" so that it came off on the edge of the wheel and the end struck the ground or chat making up the road-bed. The effect of the end of the brake stick striking the ground was such that the other end struck him in the side, knocked him off the push-car and caused the injury for which he sued.

The use of this brake stick required no skill or art. Its operation was a matter of attention on the part of the laborer, the amount of braking force depending entirely upon the pressure or weight exerted to control the speed. It operated exactly on the same principle that section hands apply every day with a clawbar in the removal of spikes, or of a pry-pole used to raise any heavy object.

One of the theories upon which this case has been presented is that the instrumentality was a simple tool and that in the use of such simple tool the master owes no duty to inspect, or would not be guilty of negligence by reason of any defects, the existence of which a laborer presumptively would know about as well as the master.

We pretermit a discussion of the simple tool theory. We think it has no application here. In negligence cases, the duty rests upon the plaintiff to establish some default on the part of the master, some omission to do what he should have done, or proof of some act done that should not have been done, whereby the master becomes liable. A failure to prove actionable negligence should always result in a verdict for the defendant.

We think the plaintiff has wholly failed in this case to establish any degree of negligence on the part of the defendant. Plaintiff relies on the proposition that the nail was driven nearly or almost through the 2 x 4 piece of timber and that the timber wore away so that the point of the nail was so exposed as to rub upon the rim of the wheel. That fact is undisputed, but it is no explanation of the further fact that the brake timber slipped or came off the wheel and struck the ground. Of course, he knew that in the operation of this brake timber he could lighten the pressure upon it, slip it back to the flange of the wheel, did that perhaps many times. His explanation is that as he heard the grating noise of the contact of the nail with the metal part of the wheel that the brake timber "was jerked off the wheel." If he knew what jerked it off he does not explain. Nobody else does. Only by guess work, surmise or conjecture may there be any explanation of the so-called "jerk." This would not justify a recovery. From the facts proved there is no inference of any other matter or fact tending to show negligence of the master.

We might assume, in trying to explain the "jerk," that there was a roughened place upon the wheel with which the nail came in contact, or that it was caused by a jolt at a high joint, or some slight obstruction upon the rail, but such matters are the purest speculation about which there is neither allegation nor proof. We have said frequently that such speculation cannot become the basis of a verdict. *Lewis* v. *Jackson,* 191 Ark. 102, 106, 83 S. W. (2d) 69; *Turner* v. *Hot Springs St. Ry. Co.,* 189 Ark. 894, 75 S. W. (2d) 675. In the realm of speculation we think it much more highly probable that at a moment of inattention the appellee permitted the brake stick to slip off the wheel and that this was the "jerk" he felt, so at an instant later, by contact with the ground, it caused his injuries.

The defendants asked the court, at the close of the testimony to direct a verdict in their behalf. The court erred in not doing so. It is true that, after the court had refused to direct a verdict on behalf of the defendants, they asked other instructions, thirty-five or more,

and if there were other error in any matter in the presentation of this case, the voluminous lot of instructions probably covered such alleged errer and cured the same. However, that was not a waiver upon the part of the defendants, after having asked a directed verdict. They may have convinced the jury, by the numerous instructions, that their case was much more dangerous than it really was. However, counsel had a right to protect, as far as they were able, the rights of the defendants upon the theory adopted by the court in the submission of the case. *Arkansas Power & Light Co.* v. *Hubbard,* 181 Ark. 886, 891, 28 S. W. (2d) 710.

This case has been thoroughly and fully presented. Since there is no showing of negligence, it is unnecessary to remand for a new trial on account of the error above-mentioned.

The judgment is, therefore, reversed, and the cause is dismissed.