SOUTHWESTERN GAS & ELECTRIC COMPANY *v.*
BIANCHI, ADMX.

4-5572                                          132 S. W. 2d 375

Opinion delivered October 16, 1939.

*Miles, Armstrong & Young* and *Arnold & Arnold,* for appellant.

*George W. Johnson* and *Harper & Harper,* for appellee.

SMITH, J. Mrs. Alice Bianchi, as administratrix of the estate of her deceased husband, Dan R. Bianchi, recovered judgment against appellant company for $9,000 in a suit in which it was alleged that his death was caused by appellant's negligence.

The undisputed testimony in regard to the circumstances of Bianchi's death are as follows. On and prior to June 9, 1937, appellant furnished electric power in the town of Greenwood. As a part of its distribution system it maintained poles and electric wires on the streets of Greenwood, one of these poles being at the intersection of Sycamore and Front streets, and on this pole a number of wires were suspended about thirty feet above the ground. The Three States Telephone Company supplied telephone service in Greenwood, and maintained a pole near that of appellant's pole from which one of the lead-in lines of the telephone company ran under the wires of appellant into the residence of one of the telephone company's subscribers.

About five o'clock in the morning of the date above stated, a windstorm blew a limb from a tree down upon one of appellant's wires, causing a short circuit. About 5:20 a. m. a nearby resident notified appellant of what had happened, and that it appeared likely that the wire would burn in two and fall to the ground. Appellant's agent to whom the notice was given replied that he would come by that morning and see about it. About 7 a. m. the power wire burned in two and fell across the telephone wire, and the end of this power wire which had fallen across the telephone wire barely reached the ground. Several persons passed by the wire, and about 7:20 a. m., Bianchi, who was employed as a lineman by the telephone company, arrived at the scene, apparently for the purpose of taking some action in regard to the wire, although there was no testimony to that effect.

The undisputed testimony was to the effect that the power wire was shooting out fire into the ground, and that the strength of the current was sufficient to burn a small hole in the ground, and that there was a buzzing noise. Bianchi climbed the telephone pole, on top of which he grasped the wire upon which the power wire had fallen in an effort to dislodge the power wire. While Bianchi was so engaged a spectator said to him, "Dan, don't you think that it might arc back on you?", and Bianchi replied, "It might, at that." Another spectator

remarked to Bianchi, "That's a pretty hot wire, ain't it?", and Bianchi replied, "Yes, it is." Bianchi desisted from the attempt to dislodge the power wire and climbed down the pole and went to his truck from which he took a piece of copper wire covered with the same insulation which was on the power wire, and with this piece of copper wire he fashioned a hook, with which he attempted to remove the power wire from the telephone wire. When the wire which Bianchi was using as a hook came in contact with the power wire he received an electric shock, from the effects of which he died within a few minutes. Some four or five minutes after Bianchi received the shock the repair crew of the appellant light company reached the scene, and disconnected the current and made an unsuccessful attempt to revive Bianchi.

There were six or eight wires suspended from appellant's pole, some of which carried as low as 110 volts, while the wire which shocked Bianchi carried 6,900 volts. The wires presented the same general appearance, and Bianchi did not know which wires carried the low nor which carried the high voltage.

Assuming that this testimony is sufficient to support the finding that appellant light company was negligent, we think it shows with even more certainty that Bianchi was guilty of contributory negligence. He had taken a course of something more than four months in an electrical school in Chicago, and was employed by the telephone company as a lineman. He may not have known which of the wires of the light company were the high tension wires, but he did know that the wire which had been burned in two was "very hot." The ground where Bianchi stood, while not muddy, was damp, and all the testimony was to the effect that the trees and the suspended power wires were wet. Bianchi wore a pair of plain canvas gloves with leather palms, which, according to the undisputed evidence, were damp. There was no testimony to the effect that Bianchi's gloves were intended or supposed to furnish insulation except as against light voltage; but he must have known that the

dampened condition of the gloves reduced their insulation value.

It was said in the case of *Oklahoma Gas & Electric Co.* v. *Frisbie,* 195 Ark. 210, 111 S. W. 2d 550, that "It is a scientifically established fact that a person whose body is wet, and who is in contact with wet ground, will, because of the concurrence of these conditions, receive a greater charge of electricity from a given point of contact than he would if his hands and body and the ground were dry. Water is a highly efficient conductor."

It is insisted, however, upon the authority of the case of *Arkansas Light & Power Co.* v. *Cullen,* 167 Ark. 379, 268 S. W. 12, that a question was made for the jury as to whether Bianchi was guilty of contributory negligence. The facts in that case were that Cullen, the person killed, discovered a wire which had broken and fallen to the ground. Cullen remarked that it was a house wire, and that he would remove it before anyone was injured by it. The undisputed testimony revealed that the house wires in that system carried only 210 volts of electricity, which would shock but would not kill one if touched where it was insulated. The wire in question was insulated, but, instead of being a house wire carrying only 210 volts of electricity, it was a primary wire carrying 2,300 volts of electricity. Cullen reached up and took hold of the wire where it was insulated, but on account of the strong current which it carried his muscles contracted and prevented him from releasing the wire, and he was killed. In holding that the question of Cullen's contributory negligence was a question for the jury, it was there said: "It cannot be said that, under the undisputed evidence, appellee's intestate voluntarily put himself in contact with the live wire, knowing it to be charged with a deadly current, for there was some evidence tending to show that he thought, and had reason to believe, that it was a house wire, carrying only a small voltage of electricity."

It is here argued that inasmuch as Bianchi received no shock when he tried to shake the power wire off the telephone wire he had the right to assume that no great

voltage was carried on the wire which had fallen on the telephone wire.

Now, it may be true, and the jury may have found, that Bianchi did not know the respective voltage carried by the different wires, but he must have known—for he, himself, stated—that the power wire was "Very hot," and he must also have known that, if he placed a copper wire, which he held in his hands, in contact with this power wire, he would receive whatever shock the voltage of that wire would produce. He took an unnecessary chance which no emergency required. He knew that some of the appellant's wires carried a high voltage, and the sputtering noise which all persons present heard and the flashes of light which all of them saw should have warned him, or any person of ordinary care and prudence, that the wire here in question was not one of the low voltage wires which could be safely touched with the copper wire which he was using as a hook.

Our own cases on the subject and cases from other jurisdictions were reviewed in the case of *Arkansas Power & Light Co.* v. *Hubbard,* 181 Ark. 886, 28 S. W. 2d 710. In that case, we reversed and dismissed a judgment for the benefit of the estate of an intestate, on the ground that intestate was guilty of contributory negligence, nowithstanding the contention that deceased did not realize the dangerous condition of a wire charged with electricity with which he came in contact. Upon the authority of the case of *Danville Street Car Co.* v. *Watkins,* 97 Va. 713, 34 S. E. 884, we held that the properties of electricity are commonly known, and persons of ordinary intelligence are presumed to know of its dangerous qualities. The late Justice BUTLER, speaking for this court, there said (181 Ark. 886, 28 S. W. 2d 711): "Three decades since the opinion in *Danville* v. *Watkins,* the use of electricity has become so general and widespread as to be a public necessity, and its properties are so universally known and recognized as to be a part of the common knowledge of the people, and it seems to be the general rule, where such is the case, all persons of ordinary intelligence and experience will be presumed to

know of its dangerous qualities. (Citing cases.)'' See, also, the cases of *Oklahoma Gas & Electric Co.* v. *Frisbie, supra,* and *Hines* v. *Consumers Ice & Light Co.,* 173 Ark. 1100, 294 S. W. 409, and *Mississippi Valley Power Co.* v. *Hubbard,* 181 Ark. 487, 26 S. W. 2d 118.

The undisputed testimony establishes the fact that Bianchi, acting in no emergency, voluntarily took a chance which he must have known was attended with the possibility of great danger and harm, and for this reason there can be no recovery for his death, which was caused by his own contributory negligence.

The judgment will, therefore, be reversed, and as the case appears to have been fully developed, it must be dismissed. It is so ordered.

HUMPHREYS, MEHAFFY and HOLT, JJ., dissent.

HOLT, J., (dissenting). I cannot agree with the majority in this case. It is my opinion that the evidence justified the trial court in submitting the question of deceased's negligence to the jury, and that this was done under proper instructions.

The evidence, as reflected by this record, is practically undisputed and to the following effect: At about 5:20 a. m. on the date of the alleged injury that resulted in the death of deceased, appellant was notified that a limb was in contact with one of its wires and that it appeared likely the wire would burn in two and fall. Subsequently, about seven o'clock, the wire did burn in two and fell across the lead-in telephone wire to the McConnell home, leaving the electric wire suspended into Front street near its middle, barely contacting the ground eight or ten feet north of Sycamore street. This wire was charged with an unknown quantity of electricity. After several people had passed by this wire in this condition, and at about 7:20 a. m., the deceased, Bianchi, a young man about thirty years of age, employed as a lineman by the Three States Telephone Company, arrived on the scene. Bianchi, upon observing that the light wire was in contact with a telephone wire that led into the McConnell home, climbed the telephone company's pole, grasped the lead-in wire which was in contact with appellant's

fallen wire and tried to dislodge it from the telephone wire, but without success. He then descended the pole, went to his car a few feet north and procured a piece of dry copper wire above five feet in length covered with the same kind of covering, or insulation, which covered all of appellant's wires. He fashioned a hook on the end of this dry wire and attempted to remove the fallen electric wire from the telephone wire over which it was hanging.

The evidence further shows that he was at this time wearing a pair of canvas gloves, the palms of which were covered with leather. This short wire, which deceased used in an effort to dislodge the electric wire was covered with weather-proofed insulation in which there were no breaks and if dry (and the testimony shows that it was) would protect from a shock or leakage of voltage up to 1,000 volts.

It is undisputed that there were seven or eight light wires on appellant's pole, all apparently of the same size, covered with the same kind of insulation, and that some of them carried a voltage of as low as 110 volts and others 6,900 volts, that carried by the wire which the deceased attempted to remove.

It seems to me that under these facts reasonable men in the exercise of fair judgment might differ on the question of the contributory negligence of the deceased.

In the instant case the deceased, a lineman for the telephone company, whose duty it was to look after his employer's property, when he came upon this scene, observed the dangerous position of the electric wire not only to people who were passing by, but to those in the McConnell residence, after taking what seemed to him the necessary precautions for his own safety and acting in what, I think, may be termed an emergency, attempted to remove this wire and unfortunately was killed in the attempt.

The law presumes against suicide, and there is no claim here that deceased intended to kill himself.

I am of the view that the instant case is controlled by *Arkansas Light & Power Company* v. *Cullen*, 167 Ark.

379, 268 S. W. 12, where this court held that where the deceased might have thought he was coming in contact with a house wire of low voltage rather than one carrying 2,300 volts he could not be guilty of contributory negligence as a matter of law. In that case, this court said: "The undisputed evidence reveals that house wires in the system carry only 210 volts of electricity, and will shock, but not kill, one if touched where insulated. The wire in question was insulated. Instead of being a house wire, carrying 210 volts of electricity, the wire in question was a primary wire, carrying 2,300 volts of electricity. Appellee's intestate reached up high and took hold of the wire where it was insulated, but, on account of the strong current, his muscles convulsed, thereby preventing him from releasing the wire. Before his companion could knock the wire out of his hands with a stick he was dead, and, when released from the wire, fell to the ground. It cannot be said that, under the undisputed evidence, appellee's intestate voluntarily put himself in contact with the live wire, knowing it to be charged with a deadly current, for there was some evidence tending to show that he thought, and had reason to believe, that it was a house wire, carrying only a small voltage of electricity. In view of the disputed evidence in this regard, it was proper to submit the issue of contributory negligence to the jury."

I think, under the facts in this case, the jury would have been justified in finding that deceased must have thought he was handling a wire of low voltage.

In *Interstate Power Company* v. *Thomas,* 51 F. 2d 964, 84 A. L. R. 681, the court held that whether plaintiff acted as a reasonable person would have acted was a question for the jury, and said: "The question of contributory negligence, like every question of negligence, is ordinarily for the jury; and it is only when there is no substantial conflict in the evidence which conditions it, and when, from the undisputed facts, all reasonable men, in the exercise of fair judgment, would be compelled to reach the same conclusion, that the court may lawfully withdraw it from them." On this record, I cannot bring myself to say that the minds of reasonable men would

be compelled to reach the conclusion that the deceased was guilty of contributory negligence.

In this connection, this case is very similar to that of *Southwestern Gas & Electric Company* v. *Murdock*, 183 Ark. 565, 37 S. W. 2d 100, in which this court said: "If the appellee did what a man of ordinary prudence would have done under the circumstances, he was not guilty of negligence. Extraordinary care is not required nor is the utmost possible caution. The duty imposed on appellee was to exercise ordinary care, but there was no duty to possess knowledge or skill so as to know there was danger because the lights burned out or because the machinery ran faster. Even if the injured party's act contributed to the injury, this would not bar recovery unless his act was negligent. It is not the contributory act that bars recovery, but contributory negligence."

For the above reasons I think the cause was properly submitted to the jury, and that the judgment of the court below should be affirmed.

Mr. Justice HUMPHREYS and Mr. Justice MEHAFFY request that they be noted as concurring in this dissenting opinion.