GULLETT, ADMINISTRATRIX, *v.* ARKANSAS POWER & LIGHT COMPANY.

4-7509                                               184 S. W. 2d 819

Opinion delivered January 22, 1945.

*Kaneaster Hodges* and *C. E. Yingling,* for appellant.

*House, Moses & Holmes* and *Horace Jewell,* for appellee.

McHANEY, J. Appellant as administratrix of the estate of her deceased husband, Noel Gullett, brought this action against appellee to recover damages on account of the death of her husband for the benefit of herself and their infant children. It appears that they lived in Jacksonport, which is three or four miles northwest of Newport, on White River; that in May, 1943, said river overflowed its banks, and on May 15, Noel Gullett went by boat, propelled by oars, to get food for his family, going down the main channel of the river; that on the return trip, accompanied in the boat by Raymond Carnes, they crossed the river, leaving from Mobley's Gravel Plant, and went through a field to avoid the current, and undertook to pass under appellee's high-tension line at a point where the lowest line was within 18 to 24 inches of the high water; and that, in attempting to pass under the line, he came in contact with a live wire, carrying 13,000 volts of electricity, and was instantly killed.

The complaint alleged negligence of appellee in the manner of constructing its line, in that in times of high water which occurred annually or oftener, the wires were so close to the water as to endanger the lives of persons who were traversing said water in boats for their own purposes and which was of such frequency that appellee knew or should have known of the danger to such persons. Verbatim allegations of negligence are: "The construction of its line in the manner aforesaid in the location above described was a negligent disregard of the rights of Noel Gullett and others whom the defendant anticipated, or should by the exercise of reasonable prudence and ordinary care have anticipated, might be endangered by contacting said line from close proximity thereto. Possessing the knowledge it did of the repeated recurrences of floods, the exodus of refugees in such times and the dangerous current of electricity carried on said wires, the defendant should reasonably have expected that persons afflicted by flood waters, such as Gullett and Carnes were, might be forced to come within dangerously close proximity to the wires as thus constructed. Thus charged with a responsibility or duty to such persons, the defend-

ant should have adopted sufficient safety methods to prevent contact with these wires, conveying a dangerous current, by these persons. The defendant negligently and carelessly failed and omitted either to insulate or isolate said wires carrying a dangerous current of electricity at this point where they should reasonably have expected and anticipated that persons in the position and circumstances of Gullett would be forced in close proximity to said wires. Construction in the manner above detailed and in the location above described was a negligent and careless disregard and violation of this duty and responsibility. This negligence of the defendant resulted in the death of Noel Gullett.''

Appellee's answer consists of a general denial, a plea that the floodwaters was the act of God, a plea of contributory negligence, and that deceased was a trespasser.

Trial resulted in an instructed verdict for appellee, on which judgment was rendered, dismissing said complaint, and this appeal followed in due course.

In the view we have of the record in this case, it becomes unnecessary to determine whether appellee was negligent in the manner of the construction of its power line, or whether deceased came to his death because the floodwater was the act of God, or whether he was a trespasser, for, if we assume that appellee was negligent in the manner charged, still appellant's intestate was guilty of gross negligence which was the proximate cause of his death. The proof in this record is undisputed and given by the only eye-witness to the tragedy, Raymond Carnes, who testified for appellant that, when they started on the return trip, he, Carnes, was doing the rowing with two oars in oar-locks, and after crossing the river Gullett took over the rowing; that when they came within 20 feet of the wires he told Gullett the electric wires were directly ahead of them and asked him if they were dangerous; that Gullett turned and looked at the wires and then steered his boat directly into them and stood up in the unsteady boat, with a high wind blowing, and attempted to lift the lowest wire with an oar or paddle

and was killed. Before doing so he told Carnes the lower wire was not dangerous, but that the upper wires were. It is also undisputed that the three wires mentioned constitute what is called a "grounded neutral system" or "phase system," with two live wires on cross-arms and a third or neutral wire below attached to poles. The neutral wire is also called the ground wire, and should not, if properly grounded, shock a person touching it. The undisputed proof is that it was properly grounded, so it appears to be certain that death was not caused by contact with the neutral or grounded wire. Moreover, it is undisputed that one of the phase wires at this point was burned in two and that deceased had a burned place on his neck and shoulder and the bottoms of his feet were also burned, showing that he came in contact with a phase wire on his neck and shoulder, he standing in the boat in a stooped-over position, and that the current grounded out through his feet. It is also undisputed that there were many places in the overflow along this high-tension line that Gullett could have steered his boat under in absolute safety, without any necessity of attempting to lift the wires, and in choosing to attempt to pass under where he could not do so without lifting the wires was negligence, even though it was a shorter route and more convenient to him than to use the places with plenty of clearance space. He was not ignorant of the danger. He told Carnes the top wires were dangerous, yet they were too close to pass under in safety, and it must have been apparent to him or anyone else of ordinary prudence. *Ark. Power & Light Co.* v. *Hubbard,* 181 Ark. 886, 28 S. W. 2d 710; *Southwestern Gas & Electric Co.* v. *Bianchi,* 198 Ark. 996, 132 S. W. 2d 375.

Having concluded that Gullett's own negligence was the proximate cause of his death, the court correctly instructed a verdict for appellee, and the judgment is accordingly affirmed.