ARKANSAS-MISSOURI POWER COMPANY v. DAVIS, et al.

5-202                                   262 S. W. 2d 916

Opinion delivered November 23, 1953.

*Reid & Roy,* for appellant.

*Gerald Brown* and *Kirsch & Cathey,* for appellee.

ROBINSON, J. Appellee James A. Davis, an employee of Paragould Poster Advertising Company, while acting in the due course of his employment, received serious electrical burns when he lost control of an aluminum ladder which he was attempting to hook onto a large signboard and it came in contact with an electric wire carrying 33,000 volts belonging to appellant Arkansas-Missouri Power Company. Appellee St. Paul-Mercury Indemnity Company is the carrier of the workmen's compensation insurance covering Davis. A jury returned a verdict for appellees against the power company in the sum of $20,-000. The appellant raises two issues on appeal, contending first, that there is no substantial evidence of any negligence on its part; and second, that appellee Davis is guilty of contributory negligence as a matter of law.

The signboard is 12' x 15' and located on private property leased by the Paragould Poster Advertising Company at the intersection of U. S. Highway No. 63 and State Highway No. 117 in Greene County. The power company's 33,000 volt electric line was constructed in 1936 and is located on the right-of-way of Highway No. 63. The signboard was constructed in 1946 and sits at an angle to the electric line; the end of the signboard over which appellee Davis was attempting to hook the ladder at the time he was injured was approximately 4 feet from the electric wire. According to measurements made some time after the date of the injury, the line was about 18' above the ground. Appellee contends, however, that according to the evidence, the jury would have

been justified in finding that at the time the injury occurred on February 19, 1951, the electric line was only a little over 16 feet from the ground, which would be less than the minimum required by the National Safety Code; and at such height the line would be even less than 4 feet from the signboard. This point is immaterial because in view of the evidence in the case, it was a question for the jury to say whether the power company was negligent in maintaining the line in such proximity to the signboard regardless of whether it was 3 feet or 4 feet.

On the particular day in question appellee along with a fellow employee, Eldors L. Staggs, went to the signboard to place a new sign thereon. They stopped their truck near the sign and each took a ladder to be used in connection with their work. The ladders had hooks on one end, and in using them these hooks were placed over the top edge of the signboard. Staggs placed his ladder over the signboard and returned to the truck for additional supplies; Davis attempted to hook his ladder over the top of the sign at the end which was nearest to the electric wire. In doing so he lost control of the ladder through slipping or otherwise, and it came in contact with the electric line which was as heretofore stated approximately 4 feet from the corner of the signboard, resulting in the burns to Davis. The evidence is not clear as to just what caused Davis to lose control of the ladder; it is alleged in the complaint that he slipped and there is some evidence to the effect that this happened. On the other hand, according to the evidence the ladder may have become overbalanced; but in any event the evidence is not sufficient to say that Davis was negligent as a matter of law in letting the ladder get out of control. Nor can we say as a matter of law that Davis was negligent in attempting to work on the sign at all with the 33,000 volt electric wire only 4 feet therefrom; the wire had been there about 15 years and the signboard had been there about 5 years; Staggs had changed the signs on the board 60 or 70 times, and Davis had done the same at least half a dozen times without any untoward happening.

In the circumstances we can not say that Davis was doing something which an ordinarily prudent person would not have done; nor can we say that in the same or similar circumstances an ordinarily prudent person would not have lost control of the ladder.

"What will constitute contributory negligence on the part of the person injured must depend upon the circumstances of each case. If from those circumstances reasonable men might differ as to whether the person did or did not exercise ordinary care, the question must be left to the jury for its determination." *St. Louis & S. F. Railroad Co.* v. *Carr*, 94 Ark. 246, 126 S. W. 850. See also *Capitol Transportation Co.* v. *Carter*, 204 Ark. 295, 161 S. W. 2d 746, and *Bush, Rec.,* v. *Jenkins,* 128 Ark. 630, 194 S. W. 704.

On this point appellant cites *Hines* v. *Consumers' Ice & Light Co.,* 173 Ark. 1100, 294 S. W. 409; *Arkansas Power & Light Co.* v. *Prince,* 215 Ark. 182, 219 S. W. 2d 766; *Bulman Furniture Company* v. *Schmuck,* 175 Ark. 442, 299 S. W. 765; *Gullett, Adm'x* v. *Arkansas Power & Light Co.,* 208 Ark. 44, 184 S. W. 2d 819; and *Southwestern Gas & Electric Co.* v. *Bianchi, Adm'x,* 198 Ark. 996, 132 S. W. 2d 375; but all these cases are distinguishable by the facts from the case at bar. Appellant stoutly relies on the case of *Arkansas Power & Light Co.* v. *Hubbard,* 181 Ark. 886, 28 S. W. 2d 710. In that case Mrs. Nettie Hubbard was injured when she was attempting to set in a hole a long pine pole to which a sign had been fastened near the top. In attempting to raise the pole, Mrs. Hubbard received a severe shock when it fell against a transmission line. There the court held that she was guilty of contributory negligence as a matter of law; but the facts in that case are clearly distinguishable from the facts in the case at bar.

Next we come to the point of whether there is any substantial evidence of negligence on the part of the power company in maintaining the line at such a short distance from the signboard. Not only was it the duty of the power company to see that its wires were properly

installed in the first instance; but it was also the duty of the company to maintain the lines in such condition. " 'From the very nature of its business, an electric company using highly charged wires owes the legal duty, irrespective of any contract relation, toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be, is liable to come into contact with the wires, to see that such wires are properly placed with reference to the safety of such persons,' etc. 9 R. C. L. § 20, p. 1210. It follows, of course, from the principle thus announced, that the wires should be inspected at reasonable intervals, mended, and kept in repair." *Arkansas Light & Power Co.* v. *Cullen,* 167 Ark. 379, 268 S. W. 12.

In *Arkansas Power & Light Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. 2d 846, the power company owned the electrical distribution system in the city of Waldo, Arkansas. In 1928, which was subsequent to the time the electric system was constructed, a two-story brick building was erected on Main Street, the second story being 4½ feet from the inside electric wire. Virgil L. Cates, an employee of an oil company, while attempting to hang a sign on the building, was electrocuted when a fellow employee jerked on the wires they were using to hang the sign and they came in contact with Cates and the high voltage electric line. There the court said: "It is true the two-story house was built after appellant's wire was put up; but when the building was erected it was the duty of the appellant to use ordinary care with reference to the building and proximity to the wire after the erection of a two-story building." The court quotes from *Curtis on Electricity,* 699: "The duty of an electric company in reference to keeping its appliances in safe condition is a continuing one; not only must it exercise a high degree of care in the original selection and installation of its electric apparatus, but thereafter it must use commensurate care to keep the same in a proper state of repair. The obligation of repairing defects does not mean merely that the company is required to remedy such defective conditions as are brought to its actual knowledge.

The company is required to use active diligence to discover defects in its system. In other words, an electric company is bound to exercise due care in the inspection of its poles, wires, transformers, and other appliances.''

In the same case the court quotes from *1 Joyce on Electricity*, 735: ''A company maintaining electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have a right to go, either for work, business, or pleasure, to prevent injury.''

The court further said in *Arkansas Power & Light Co.* v. *Cates,* supra,: ''It is argued by appellant that the injury would have occurred if the wires had been 8 or 10 feet from the building, and they state that the evidence of Dice that they should have been at least 6 feet from the building, cannot indict the appellant company with negligence. . . . But, at any rate, we think under all the authorities that the negligence of the company was a question for the jury.''

We have in the case at bar testimony of experts as to whether permitting the line to remain at a distance of only 4 feet from the signboard after the erection of the sign was in accordance with well-recognized safety measures generally followed by those constructing and maintaining high voltage lines. Lee Harvill, produced as a witness by appellee, testified that he is engaged in all phases of electrical business as far as construction is concerned, including the construction of electrical transmission lines; that he has been in that business for 25 years and has constructed lines for Arkansas Power & Light Company, Empire State and Empire Electric Company of Joplin, all the co-ops of the state, and Ka-Mo Electric Co-op; that he has built hundreds of miles of electrical transmission lines in the last 20 years and built them all over Arkansas, Oklahoma, Missouri, Texas, Louisiana, and Mississippi. Mr. Harvill testified that the construction of the line was all right if the signboard had not been there; but it was a different matter with

the signboard being located as it was. "Q. Without the sign being there, it was all right; but with the sign there, what would be your opinion with reference to the construction? A. The wire should have either been raised or removed, or the sign put some other place, because the hazard was there."

The witness Harvill further testified that if he had been building the line he would have constructed it so that there would have been an additional 10 feet of space between the wire and the signboard; and further: "Q. As a matter of practice in the utility industry, Mr. Harvill, when there is a construction which at the time it is made does not involve another structure, and later there is created a structure which develops a hazard, what are the customary practices on the part of the utility companies relative to raising or removing—relative to the raising or removal of their line? A. Where it is known by them they move it. Q. They move it? A. That's right." There is no contention here that the electric company did not know of the location of the signboard with reference to the electric wire. Furthermore Mr. William P. McCormick, an electrical engineer employed by appellant company, testified: "Q. And you knew it was its [the power company's] duty, even if its lines were originally constructed in a safe condition, to make changes if an additional hazard had been later developed? A. Yes, sir."

Also Mr. Paul M. Zander, an expert called as a witness by appellee, testified as to the location of the electric line with reference to the signboard, and then stated: "Q. Viewing this situation as you found it to exist, would the clearances which you found here, particularly along the right hand side of this signboard—I mean by that the right six feet—would the clearances which you found to exist at that particular point be sufficient, according to the generally accepted standards of the engineering profession and the industry? A. I would say no." Witness further stated that the effect of inadequate clearance between the signboard and the electric line would be to increase the hazard. "Q. Would you say that a 33,000

volt wire would be a hazardous thing so far as the possibility of contact was concerned? . . . A. Yes, I would."

We think the testimony of Harvill and Zander was sufficient to take the case to the jury on the question of whether the defendant power company was negligent in permitting the electric line to remain within about 4 feet of the signboard after the construction of the board. The testimony of these two witnesses is one of the distinguishing features between this case and the case of *Arkansas Power & Light Co.* v. *Lum,* 222 Ark. 678. It might be asked, how can it be said that the power company should have anticipated the very thing that did happen, but that the injured party be relieved from any duty to foresee what might happen even though he realized the dangerous qualities of electricity. The answer is that the questions of negligence and contributory negligence were peculiarly within the province of the jury to decide, there being sufficient evidence to justify the submission of both issues.

We can not say as a matter of law according to the testimony in this case that there was no negligence on the part of the power company in permitting its 33,000 volt electric line to remain within 4 feet of the signboard; nor can we say as a matter of law according to the evidence in the record that appellee is guilty of contributory negligence. These two are the only issues involved.

Affirmed.