JUANITA L. BLACK *v.* DeWITT T. JOHNSON

5-5951                                        481 S.W. 2d 701

Opinion delivered June 19, 1972

*Haskins & Larrison,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* for appellee.

J. Fred Jones, Justice. This is an appeal by Juanita L. Black from a judgment of the Pulaski County Circuit Court based on a jury verdict in favor of DeWitt T. Johnson in a personal injury suit brought by Mrs. Black against Mr. Johnson growing out of an automobile collision.

On her appeal to this court Mrs. Black relies on the following points for reversal:

"The verdict of the jury was not supported by substantial evidence.

The Court erred in failing to grant the plaintiff's motion for new trial on the grounds of newly discovered evidence.

The court erred in failing to grant the plaintiff's motion for new trial on the grounds of surprise at the time of trial."

The record reveals the following facts: On September 12, 1968, Mrs. Black was driving her automobile east on 25th Street in the City of Little Rock, and a westbound

city bus had stopped on the north side of 25th Street at the Lewis Street intersection. As Mrs. Black drove her automobile across Lewis Street and past the bus, Mr. Johnson was driving his automobile into 25th Street from a private driveway on the north side of 25th Street approximately 75 or 80 feet east of the curb line of Lewis Street, and his automobile collided with the one driven by Mrs. Black.

Mrs. Black alleged in her complaint that Mr. Johnson was negligent in failing to yield the right-of-way, in failing to keep a proper lookout, in failing to keep his vehicle under proper control and as a result of such negligence she sustained injuries to her cervical, dorsal and lumbar spine, as well as an aggravation and acceleration of degenerative disc disease, to her damage in the amount of $38,000, and sustained damage to her automobile in the amount of $200. Mr. Johnson answered with a general denial and alleged that any damage sustained by Mrs. Black was occasioned by her own negligence in failure to yield the right-of-way, failure to keep her vehicle under control, failure to keep a proper lookout and failure to operate her vehicle at the proper rate of speed under the circumstances.

Under Mrs. Black's first point she apparently recognizes the well established rule that if there is any substantial evidence to sustain the jury verdict, we must affirm the judgment rendered thereon. Mr. T. A. Owen testified that at the time of the collision he investigated the accident. He testified that 25th Street was 26 feet wide and that he determined, from the debris on the street, that the point of impact between the two vehicles was 19 feet south of the north curb of 25th Street, and approximately 79 feet east of the east curb of Lewis Street. He said that Mr. Johnson stated to him that he was traveling between five and eight miles an hour coming out of the driveway into the street when the collision occurred; that Mrs. Black's automobile had traveled some distance up the street from where he determined the point of impact had occurred, and that he does not remember where Mr. Johnson's automobile was following the accident. He testified that Mrs. Black stated she was going 20 miles

per hour and he found no skid marks behind either automobile. He testified that Mr. Johnson's automobile was damaged on the right front and that the debris he noticed consisted of a piece of chrome from an automobile and dirt covering an area approximately two feet wide and six feet long.

Mrs. Black testified that she was going east on 25th Street and then testified in part as follows:

"A. * * * There was a bus stopped on Lewis there and I didn't know whether they were loading or unloading school children because it was about Seven Thirty in the morning, and I had slowed up and I got almost passed the bus and I glanced and saw Mr. Johnson coming out of his driveway, headed north and I tried to speed up a little bit, but I didn't make it and he hit the left side of my Rambler on the back door and dented it to where I had to have it repaired, tore the chrome off.

Q. Mrs. Black, did you have an opportunity to do anything to avoid this accident?

A. Nothing only I tried to speed up a little bit and I didn't make it. I wasn't going very fast."

Mrs. Black testified that it cost $146 to have her automobile repaired; that by the time she got her automobile stopped she was very nervous but didn't feel any pain at that time. She said she went to Dr. Lohstoeter four days after the collision and at that time was having pain in her low back and was having terrible headaches. She testified that she continued to return to Dr. Lohstoeter at intervals for almost a year and although the collision occurred almost three years ago, she still has difficulty which is growing worse as far as her nerves, legs and back are concerned; that she still has pain in her neck and still has headaches.

On direct examiniation Mrs. Black testified as to medical bills she had been out since the injuries and also testified as to an estimate made of her automobile damage

in the amount of $146.60 which she paid for the repair of her automobile.

On cross-examination Mrs. Black testified that prior to the accident she had been going to Dr. Ogden for treatment since 1962 and had been receiving shots for her spine from Dr. Ogden from about 1967. She said that these shots given her by Dr. Ogden were for relaxing her muscles and that she had been going to see him immediately prior to the accident.

"Q. But you didn't go to see him after this accident?

A. No, because it was an orthopedic job, he's no orthopedic, he's just an M.D. and surgeon.

Q. Okay. But he had been treating you for the back problem?

A. He gave me shots in my spine to relax the muscles.

Q. Since 1967?

A. I'm not taking them now.

Q. Okay, but from 1967, up until the time of the accident?

A. Along in there, in '67 for about six months, he gave me shots in my spine to relax the muscles. I hadn't been to him since. Is that clear, is that what you wanted to know."

On cross-examination Mrs. Black testified that she gave a check for repairs; that she did not have the canceled check with her and did not sign a ticket. She testified that the automobile was repaired about three days after the accident. She then identified her signature on a ticket from Twin City Rambler, Inc. dated September 13, 1968, in the amount of $30.02 representing labor in the amount of $21 for painting left rear door and quarter panel. She testified, however, that this ticket, although

dated the day following the accident, was not for repair of the damage occasioned in the collision, and that she does not know where that ticket came from. She testified that she had surgery on her back consisting of a laminectomy in 1940 or 1942 and had a myelogram in the Missouri Pacific Hospital in 1962. She said that she had been in Missouri Pacific Hospital two or three times for pain in both legs since 1962 and had continued taking spinal injections from Dr. Ogden from 1962 up until the time of the collision.

Mrs. Black testified on cross-examination that she did not know how fast Mr. Johnson's automobile was moving at the time of the collision, she then testified on cross-examination as follows:

"Q. You didn't leave any skid marks in the street??

A. I didn't skid any.

Q. You didn't even put on your brakes?

A. Yes, I did.

Q. Before the accident?

A. No, sir, I tried to get out of the way of him.

Q. You stepped on the gas?

A. I did.

Q. You didn't try to stop.

A. I did stop as soon as he hit me.

Mr. Doyle Blackburn testified that he was the owner and manager of the Twin City Rambler, Inc. He testified that he had searched the records concerning repairs to Mrs. Black's automobile for the month of September, 1968, and found only the one bill which was the bill already referred to and offered in evidence as defendant's exhibit No. 1. The record on this point shows as follows:

"MR. BAKER: Your Honor, offer Defendant's Exhibit 1.

MR. LARRISON: No objection.

THE COURT: Received.

MR. BAKER: That's all I have."

On cross-examination Mr. Blackburn testified that in many instances an estimate of damage to an automobile is made in one amount and all the repairs may not be made and paid for at the same time. According to Mr. Blackburn the estimate of damage and cost of repairs were made on September 12, 1968, in the amount of $146. The repair bill was dated the following day in the amount of $30.02 and the bill was paid four days later on September 17, 1968.

Dr. John Lohstoeter testified as to a change in the normal curvature of Mrs. Black's cervical spine which he attributed to the accident, and also concluded that Mrs. Black had some aggravation in the lumbar spine where she had previously had a laminectomy.

Mr. Johnson testified that on the day of the accident he had gone to Mrs. Atchley's house to pick her up to baby-sit for his wife. He said that he backed his automobile into the Atchley driveway on the north side of 25th Street and as he started to leave he stopped his automobile with its front end in 25th Street and waited for a pickup truck to pass on 25th Street. He testified that he was still stopped with the rear portion of his automobile still in the Atchley driveway when Mrs. Black drove her automobile into his automobile. He said he does no believe his automobile extended to Mrs. Black's proper side of the street at all when Mrs. Black struck his automobile. He testified that the damage was very light to both automobiles. Mr. Johnson testified on cross-examination that his automobile was completely stopped when the collision occurred and that he did not tell the police officer otherwise. He testified that his automobile was completely in his westbound lane of 25th Street when the accident

occurred. He said there is no center line marked on 25th Street and that he does not believe any part of his automobile was across the center of the street. Mr. Johnson testified that the bus was stopped in the westbound lane of 25th Street at the intersection of 25th and Lewis Streets. He said he did not know exactly how far the bus was from his automobile at the time of the collision, but he estimated that it was about two or three car lengths from the Atchley driveway.

Mrs. Myrtle Atchley, the passenger in Mr. Johnson's automobile, corroborated Mr. Johnson's testimony that the Johnson automobile was stopped when the accident occurred. She also testified that Mr. Johnson's automobile had not crossed the center of the street when the collision occurred. She testified that she was still drinking some coffee she brought from her house when the collision occurred and that the collision impact was not severe enough to cause her to spill the coffee from the cup.

We are of the opinion that there is substantial evidence in the form of Mrs. Black's own testimony from which the jury could have found that when Mrs. Black observed the Johnson automobile coming out into the street from the private driveway, and instead of slowing down, stopping, or yielding the right-of-way to the Johnson vehicle, she negligently accelerated her speed in an effort to pass in front of Mr. Johnson before he temporarily blocked her passage, and that she thereby collided with the Johnson automobile. From the testimony of Mr. Johnson and Mrs. Atchley the jury could have found that the Johnson vehicle was completely stopped on its side of the street and that Mrs. Black negligently ran into it.

As to Mrs. Black's second and third points, in support of her motion for a new trial she presented the affidavit of Mr. John Lanier, the bodyshop foreman for Twin City Rambler, Inc., who stated that Mr. Black brought his automobile to Twin City Rambler, Inc. for repairs on September 12, and that he prepared the estimate for Mr. Black which was offered in evidence as plaintiff's exhibit A. He stated that Mr. Black needed the

automobile repaired as soon as possible and that he took the automobile to his home and repaired it over the weekend of September 14 and had the damaged area painted at Twin City Rambler, Inc. He stated in his affidavit that the painting and one body side molding were all that were billed through Twin City Rambler, Inc. since the work was performed on the automobile in his off time. He stated that Mr. Black paid him by check in the amount of $146.61 which was the amount stated in the original estimate, and that of this amount approximately $30 was paid to Twin City Rambler, Inc. for the work performed at Twin City Rambler, Inc.

Mrs. Black contends that the court erred in not granting a new trial on this newly discovered evidence. Ark. Stat. Ann. § 27-1901 (Repl. 1962) provides as follows:

"A new trial is a re-examination in the same court of an issue of fact after a verdict by a jury or a decision by the court. The former verdict or decision may be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party:

* * *

Third. Accident or surprise which ordinary prudence could not have guarded against.

* * *

Seventh. Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

In *Sellers* v. *Harvey*, 220 Ark. 541, 249 S.W. 2d 120 (1952) we said:

"This court has consistently applied the following rules in considering an application for a new trial on the ground of newly discovered evidence under the seventh sub-division of Ark. Stats., § 27-1901: First,

the testimony must have been discovered since the trial; second, it must appear that the new testimony could not have been obtained with reasonable diligence on the former trial; third, it must be material to the issue; fourth, it must go to the merits of the case, and not to impeach the character of a former witness; fifth, it must not be cumulative. *John Robins* v. *Absalom Fowler*, 2 Ark. 133; *Mo. Pac. Transportation Co.* v. *Simon*, 200 Ark. 430, 140 S.W. 2d 129.

Another settled rule is that the motion is addressed to the sound discretion of the court and this court will not reverse for failure to grant it unless an abuse of such discretion is shown. *Forsgren* v. *Massey*, 185 Ark. 90, 46 S.W. 2d 20."

We are of the opinion, therefore, that the trial court did not abuse its discretion in refusing to grant a new trial. A full explanation of the repair bills was available to Mrs. Black at the time of the trial. On direct examination Mrs. Black placed in evidence the repair estimate in the amount of $146.61 and testified that she paid this amount by check. She was not in a position to claim surprise when she was cross-examined on this item and rebuttal evidence was offered without objections. Furthermore, it is clear from Mr. Blackburn's testimony that a part of the repair bill could have been paid at one time and a part at another. Mrs. Black testified that she drove the damaged automobile down to the garage following the collision and then went to her attorney's office. She testified:

"A. I put my car in the garage, yes, sir.

Q. At the Twin City American Rambler?

A. Yes, sir, at Fourth and Cross.

Q. Did they repair it that day?

A. No, sir.

Q. The next day?

A. It was about three days later.

Q. Three days before you got it back?

A. Yes, sir.

Q. Was all the damage that was done repaired?

A. Yes, sir.

Q. Do you remember signing a ticket out there?

A. Out where?

Q. Out at the Twin City American where you car was repaired?

Q. When I gave them the check, I didn't sign no ticket.

Q. You gave them a check?

A. Yes, sir.

Q. Do you have that with you here today?

A. No, I do not."

It should not be overlooked that Mr. Black also testified immediately following the testimony of Mrs. Black and although the affidavit of Mr. Lanier indicates that the entire transaction concerning repair to the automobile was had with Mr. Fred B. Black, Mr. Black made no effort to clear up any discrepancy in Mrs. Black's testimony concerning the repair of the automobile.

We conclude, therefore, that the appellant's second and third points are without merit.

The judgment is affirmed.