ROWE AUTO & TRAILER SALES, Inc. *v.*
Henry KING

74-194                          ·                          517 S.W. 2d 946

Opinion delivered January 20, 1975

485

*Robert D. Smith III* and *Smith & Peters,* for appellant.

*R. David Lewis* and *Griffin J. Stockley,* for appellee.

GEORGE ROSE SMITH, Justice. This action at law was brought by Rowe Auto, a used car dealer, to recover an unpaid balance of $580 due under a contract by which it sold a 1965 Chevrolet car to King. King counterclaimed for cancellation of the contract on the ground that it was usurious under Arkansas law and violative of the federal Truth In Lending Act. The trial judge, sitting as a jury, entered a judgment canceling the contract and awarding King damages of $1,000 and an attorney's fee of $500. Rowe Auto questions the sufficiency of the evidence and the court's ruling upon issues of law.

On November 24, 1972, King signed a contract by which he purchased the 1965 Chevrolet for a recited cash price of $1095. The down payment was $250. The unpaid balance of $845 was payable in weekly installments of $20 each, with a final installment of $5. The contract, although reciting the "Amount Financed" as $845, stated that there was no finance charge and thus no annual percentage rate of interest.

King's theory of the case, with respect both to usury and to the Truth in Lending Act, is that Rowe Auto in fact exacted a finance charge by inflating the credit price far above what the seller would have accepted in a cash transaction. Inasmuch as the provisions of the federal statute and accompanying regulations are more explicit than our case law with regard to usury, we confine our discussion to the federal law. We should add, however, that the appellant's reliance upon our holding in *Ford* v. *Hancock*, 36 Ark. 248 (1880), is not justified, in view of our decisions in *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S.W. 2d 973 (1952), and *Sloan* v. *Sears, Roebuck & Co.*, 228 Ark. 464, 308 S.W. 2d 802 (1957).

The Truth In Lending Act, 15 USCA, Chapter 41, Subchapter I, has been extensively implemented by Regulation Z (which is printed immediately after the Act in USCA). Section 226.2 (i) of the Regulation provides that a "cash price" may include the cash price of accessories or services related to the sale, but it cannot include interest or a time price differential, as set out in § 226.4 (a) (1) of the Regulation. In sustaining the Regulation the Supreme Court pointed out in *Mourning* v. *Family Publications Service*, 411 U.S. 356 (1973), that one former means of circumventing the objectives of the Act, as passed by Congress, was that of "burying" the cost of credit in the price of goods sold.

King, to show such a violation of the Act (and usury) in this instance, introduced the testimony of Larry Davis and Jim Ahrend. Davis testified that he had gone to the Rowe Auto used car lot on the afternoon before the trial, had asked the credit price of a certain dented 1966 Chevrolet, and had been quoted a price of $995, payable $200 down and $15 a week. Davis testified that he talked to Rowe Auto's assistant

manager, who had testified earlier and was sitting in the courtroom.

The second witness, Ahrend, testified that he too had gone to Rowe Auto, had proposed to a salesman that he would pay cash for the same car, and had been quoted a price of $450. Ahrend obtained a written statement of that price, which was received in evidence. Rowe Auto made no effort to contradict the testimony of either witness.

The trial court overruled Rowe Auto's objections to the testimony, holding it admissible to show that interest was hidden in the credit price. The only plausible argument now urged against the admissibility of the testimony is that it was too remote, because the date of trial was slightly more than eight months after King's original purchase.

That argument is without merit. In *Fulwider* v. *Woods,* 249 Ark. 776, 461 S.W. 2d 581 (1971), we considered the admissibility, in civil cases, of evidence of other transactions as tending to show a general plan or motive. Although such evidence is usually offered in criminal cases, we discerned no reason why the same rule should not apply in civil cases. Since there is no precise way of determining what is too remote in time, we said that the admission of such testimony rests largely in the sound discretion of the trial court. In *Caton and Headley* v. *State,* 252 Ark. 420, 479 S.W. 2d 537 (1972), we again considered the issue of remoteness and discussed one case where the similar conduct had occurred about a year before the offense charged, a second case where the interval was more than two years, and a third where it was from four to five years. In each instance the evidence was held to be admissible. Our conclusion: "The trial court's latitude of discretion in the matter of remoteness is illustrated in these cases."

There was certainly no abuse of discretion in the case at bar. In fact, if the two witnesses had priced a car at the Rowe Auto lot, say, six months before the trial, Rowe Auto might easily have been at a disadvantage in trying to refute their testimony after that lapse of time. By contrast, no similar handicap existed with reference to incidents that took place

on the day before the trial. The trial judge was doubtless impressed, as we are, by Rowe Auto's failure to dispute the proffered testimony and, additionally, by Mr. Rowe's failure to take the witness stand and submit to cross-examination under oath, even though his assistant manager had testified that Rowe handled all such cash transactions.

In view of the testimony just mentioned we must reject the appellant's argument that King failed to prove a violation of the Truth in Lending Act. Under that statute a cash price must not include interest or a time price differential. Thus the trial court, in order to sustain the appellant's contention, would be required not only to reject the testimony of Davis and Ahrend but also to conclude, without proof, that Rowe Auto would have been equally willing to sell the car to King either for $1095 in cash or for that amount payable, as the contract specified, $250 down and $20 a week for 42 weeks.

We must, however, sustain the appellant's contention that King failed to offer substantial proof that the car which he bought was worth only $500, as the trial court found. King did not introduce any expert testimony of value. Instead, he relied upon a finance company employee, who testified that a "Red Book" of used car values showed the car to be worth $500. In overruling the appellant's objection to that proof the trial court expressed his belief that the Red Book valuation would have been inadmissible at common law but was admissible under the Uniform Commercial Code, Ark. Stat. Ann. § 85-2-724 (Add. 1961), which permits the introduction of trade journals or periodicals.

To begin with, the witness was able to testify only that the Red Book used in the Arkansas offices (their number not being specified) of his own employer. That testimony fell short of establishing the Red Book as a trade journal or periodical. Moreover, the trial court was in error in concluding that the UCC rule of evidence is applicable to this case. Even though the contract of sale between the parties is governed by various provisions of the Code, that statute has no bearing upon the issues now presented, involving usury and Truth In Lending. The UCC does not purport to lay down general rules of law governing litigation not arising un-

der the provisions of the Code. Hence the trial court's ruling upon the admissibility of the evidence should have followed the common law rather than the UCC rule. It follows that there is no substantial evidence to support the lower court's essential finding that the value of the car purchased by King was $500.

We find it unnecessary to discuss other arguments urged by the appellant.

Reversed and remanded for a new trial.