ARKANSAS POWER AND LIGHT CO.
*v.* Jetta Catherine JOHNSON, Administratrix
of the Estate of Richard Lee
JOHNSON, Deceased

75-322                                    538 S.W. 2d 541

Opinion delivered July 12, 1976

238

*House, Holmes & Jewell,* for appellant.

*McMath, Leatherman & Woods, P.A.,* by: *Phillip H. McMath,* for appellee.

WALTER R. NIBLOCK, Special Justice. Jetta Catherine Johnson, Appellee, brought this action as Administratrix of the estate of Richard Lee Johnson, deceased, on her behalf as widow and on behalf of her two minor children, against Arkansas Power and Light Company, Appellant.

Richard Lee Johnson was employed as a painter by Don McCormick Paint Company for approximately two weeks prior to his death. During that time, he had worked at the Community Church, 20th and Louisiana in Little Rock, Arkansas. When the accident occurred, Johnson had begun to apply the second coat of paint, repeating the work he had done in applying the first coat.

The church, on the west side, has three levels, namely a one-story annex that has a flat roof, and two additional slanted roof levels above the flat roof. On either side of the building are two telephone poles, the north pole standing erect, and the south pole leaning to the east. Various wires were strung from the poles including an Arkansas Power and Light Company neutral wire, hanging approximately 14 feet above the flat roof level. Also, strung from these poles, about 20 feet above the flat roof, was an Arkansas Power and Light Company primary conductor, which carried 7620 volts.

On the day of his death, Mr. Johnson began work at 8:00 a.m. He was working on the flat roof, using an aluminum ladder extended to about 22 feet and an electric spray painting machine. Working with him was Robert Cochran, also a painter. The two painted along the west side of the building, going from north to south. While Mr. Cochran went down to the ground to get more paint, Mr. Johnson picked up the ladder, holding it vertically and proceeded to move the ladder south to go around the corner. When Cochran last saw Johnson, he was moving the ladder

around the corner.

Mr. Cochran testified that while he was on the ground, he heard Mr. Johnson make a groaning noise. He found Mr. Johnson lying on the roof on his back. The aluminum ladder was dangling toward the ground. Mr. Johnson was breathing irregularly, but died shortly thereafter.

An autopsy revealed a small lesion on the deceased's right little toe which was found to be an electrical exit wound and that death was by electrocution. However, the deceased also was afflicted with cirrhosis of the liver, and at the time of death he had a blood alcohol level of .06%.

Mr. Earl Looper testified, over the objection of the appellant, that approximately six weeks after the death of Mr. Johnson, he received an electrical injury, which required hospitalization, at the same spot as did the deceased. Mr. Looper was repairing the church roof and was also using an aluminum ladder. The parties stipulated that the physical conditions existing at the time of both accidents were not only substantially similar but identical.

Mr. Robert Frank, an electrical engineer, testified for the appellee that, in his opinion, the conditions concerning the existence of the powerlines in question were unsafe and in violation of the National Electric Safety Code. However, Mr. Charles Dietz, witness for the appellant, testified that the measurements were in compliance with the National Electric Safety Code.

The case was tried before the jury on two separate occasions, on each occasion the jury returned similar verdicts in favor of the plaintiff. In the first trial, the jury erroneously awarded the estate of the deceased $96,200.82, even though the estate was entitled to recover only funeral expenses and some $10,000.00 for conscious pain and suffering. Therefore, the plaintiff joined in the defendant's motion for a new trial which was granted. The second trial again resulted in a verdict in favor of the plaintiff for $151,616.42. It is from this judgment that appellant appeals.

Appellant raises two points for reversal. It is first argued

that the trial court erred in admitting the testimony of Earl Looper concerning his subsequent electrocution on the same premises on which deceased suffered his fatal shock. We find this point to be without merit.

The general rule with regard to the admissibility of evidence of similar occurrences is that such evidence is admissible only upon a showing that the events arose out of the same or substantially similar circumstances and the burden rests on the party offering such evidence to prove that the necessary similarity of conditions exists. *Fulwider* v. *Woods*, 249 Ark. 776, 461 S.W. 2d 581 (1971); 32 *CJS Evidence*, § 584. There is no question that the appellee adequately sustained this burden at the trial since the defendant stipulated "that the conditions of the building and of the facilities both of Arkansas Power and Light Company and any other physical matters connected with the location are the same today as they were in April, 1972, and in June, 1972."

The issue, therefore, becomes one basically of relevance. It is appellant's contention that evidence of a prior similar accident is admissible only for the purpose of showing notice of a dangerous condition to the alleged tortfeasor. Not only is this point irrelevant because we are concerned here with a subsequent accident, but it is a misinterpretation of our prior decisions. *St. Louis Southwestern Railway Company* v. *Jackson, Adm'r*, 242 Ark. 858, 416 S.W. 2d 273 (1967), is cited for this proposition; however, in that opinion we stated:

"The annotation in 70 ALR 2d 170 points out that 38 states and several of the federal courts have held evidence of a prior similar accident admissible to establish a dangerous or defective condition at the place in question, where the dangerous condition of the place in question is at issue. In addition, 36 such states and several of the federal courts have held such evidence admissible to show defendant's notice of the existence of the defect." 416 S.W. 2d at 276.

Nowhere in that opinion was it stated that evidence of a prior similar accident is admissible *only* to show knowledge of the dangerous condition on the part of the defendant.

In allowing the introduction of the evidence in question, the trial court stated:

"The statement I made about proffered evidence applies, of course, to his motion as it does to others, but I have given considerable time and concern and attention to this matter since it was a question in the first trial. I have come to the conclusion that under appropriate conditions and proper foundation evidence of the subsequent accident may be introduced in this case to prove, not necessarily the existence of a particular physical condition or situation because that you say you have stipulated or will stipulate, but to show that the plaintiff's injury was caused by the alleged defective dangerous condition or situation, to show that the situation as of the time of the accident sued for was dangerous and to refute any argument, which I assume will be made, or evidence to the effect that it was impossible for this to happen. I'm talking about the first instance where Johnson was injured, to refute any evidence or claim that it is impossible for that accident to have happened." ***

As authority for its position, the trial court relied on McCormick, *Evidence,* § 200 (2nd Ed. 1972), *Rowe Auto and Trailer Sales, Inc.* v. *King,* 257 Ark. 484, 517 S.W. 2d 946 and *Fulwider* v. *Woods,* 249 Ark. 776, 461 S.W. 2d 581 (1971). McCormick recognizes that proof of other similar accidents and injuries in negligence cases may be offered for the purpose of proving the existence of a particular physical condition, situation or defect; showing that the alleged defective or dangerous situation caused the plaintiff's injury. He points out that the need is plainer where the issue of cause is in genuine dispute because the inference of causation is an elusive one as to which circumstantial evidence is appropriate. We agree with appellee that these purposes were adequate to call for the exercise of the trial court's discretion as to admissibility of the Looper testimony.

In *Fulwider* v. *Woods,* supra, we stated:

"The question involved is basically one of relevance. Its resolution involves the same or similar fac-

tors involved in determining admissibility of proof of prior or subsequent conditions or conduct to prove an existence of a condition or conduct at the time in issue. This determination is usually held to be within the discretion of the trial court. See *Giroux* v. *Gayne*, 108 NH, 394, 236 A. 2d 695 (1967); *Cogswell* v. *C. C. Anderson Stores Co.*, 68 Idaho 205, 192 P 2d 383 (1948); *Jenson* v. *Southern Pacific Company*, 129 Cal. App. 2d 67, 276 P. 2d 703 (1954); *Manning* v. *New York Telephone Company*, 388 F. 2d 910 (2nd Cir., 1968); *Little Rock Gas and Fuel Co.* v. *Coppedge*, 116 Ark. 334, 172 S.W. 885. Of course, there is no reversible error in such cases in the absence of an abuse of discretion." 461 S.W. 2d at 587.

Although the *Fulwider* case dealt with the admissibility of evidence showing subsequent conduct in an action concerning fraudulent misrepresentations, that case is not so distinguishable that its principle is inapplicable to the case at bar. The cases cited in *Fulwider* to support the principle that the relevance and admissibility of evidence concerning prior or subsequent accidents are within the discretion of the trial court, include many personal injury actions. In *Manning* v. *New York Telephone Company*, the court stated:

"Appellant complains of the admission of testimony relating to the condition of the pole step hole on dates as much as three years after the accident as evidence of the condition of the pole step hole at the time of the accident. Whether evidence of a subsequent condition should be admitted depends upon the time elapsed and the likelihood of a change in condition during that interval. Absent an abuse of discretion, a trial judge's decision to admit such evidence will not be disturbed on appeal." (citations omitted) 388 F. 2d at 912.

Admission of evidence of subsequent incidents, like that of prior incidents poses the question of relevancy, even though the admission of the former must be approached with greater caution than the latter. Questions of relevancy address themselves to the sound judicial discretion of the trial judge. The exercise of that discretion should not be reversed on appeal except for manifest abuse.

Several cases of other jurisdictions which involve electrocution have also held evidence of subsequent accidents admissible. In *Moran v. Corliss Steam Engine Co.,* 21 RI 386, 43 A. 874 (1899), testimony concerning electrical shocks received by employees subsequent to the shock received by the plaintiff was held admissible as being relevant to prove the particular conditions and lack of insulation at the time of the accident. In *Robinson v. Western States Gas and Electric Co.,* 184 Cal. 401, 194 P. 39 (1920), evidence of a shock suffered by another individual approximately three months after the plaintiff's electrocution was introduced to show that if the conditions produced a shock upon one person, in all probability it would have produced the same shock upon the deceased palintiff. In *Vicksburg Railroad and Light Co. v. Miles,* 88 Miss. 204, 40 So. 748 (1906), evidence of subsequent electrical shocks was admitted to prove that the railroad had not properly grounded its rails. These cases and others are discussed in the Annotation at 81 ALR 685.

Without further belaboring the authorities on the question, we have concluded that we cannot say that the trial judge abused his discretion in admitting the testimony of Looper. In arriving at this conclusion, we do not consider the similarity of conditions existing at the time of the two incidents as the sole basis for the judge's exercising his discretion to admit the evidence. The critical factor was aptly pointed out by the trial judge in his remarks in ruling on admissibility, i.e., that the proximate cause of Johnson's death was a very important issue in the case. The cause of death had been for some period of time something of a mystery. Consequently, the evidence of causation was based upon circumstances and the opinions of medical experts. Under these peculiar circumstances we find no abuse of discretion in admitting this evidence.

The second point relied upon for reversal by the appellant is that the trial court erred in overruling appellant's motion for directed verdicts and for judgment *non obstante veredicto.* Appellant argues that as a matter of law it was not negligent or, in the alternative, that the decedent's own acts and omissions constitute sufficient negligence to bar recovery under Ark. Stat. Ann. § 27-1730.1 (Repl. 1962). Both parties introduced testimony concerning whether or not the

appellant complied with the standards of the National Electric Safety Code. Appellant points out our prior statement that construction in compliance with the Code constitutes a prima facia showing of the lack of negligence on the part of the utility company. *Southwestern Gas and Electric Co.* v. *Deshazo,* 199 Ark. 1078, 138 S.W. 2d 397 (1940). Electric companies are responsible to the public for the steady production and supply of power and it is inconceivable that they should be held liable for injuries which cannot reasonably be foreseen, especially when adequate safety measures have been taken. *Arkansas Power and Light Co.* v. *Lum,* 222 Ark. 678, 262 S.W. 2d 920 (1954). Therefore, appellant argues that since the company complied with the safety measures enunciated in the National Electric Safety Code, it is not negligent as a matter of law. However, in *Arkansas Power and Light Co.* v. *McGowan,* 227 Ark. 55, 296 S.W. 2d 430 (1956), we found that compliance with the rules of the National Electric Safety Code can be a factual question of negligence to be determined by the jury.

Even though the specific standards of the National Safety Code were complied with, an expert witness called by appellant testified that these were minimum standards which were not practical for this particular installation. More importantly, he pointed out that the code itself recognized that service requirements frequently called for higher factors of safety and said that, in view of the particular situation here, the mere fact that there was more than the minimum diagonal clearance between the building and the primary conductor was meaningless. The evidence established that the south pole tilted to the east causing the horizontal measurement at the south end ot be 1.64 feet from the insulated primary wire to the roof line. If the pole were vertical, the distance would have been 4.22 feet The table accompanying the National Electric Safety Code requires a minimum horizontal clearance of three feet. More importantly, the evidence established that there was a vertical clearance between the roof and the uninsulated primary line of 19.662 feet and a horizontal clearance of 2.495 feet at the north end. The base of the supporting poles at the north and south ends of the building were virtually equidistant from the building. The south pole supported a 1200 pound transformer attached to the east side of the pole. The guy wire on this pole extend-

ed to the south rather than to the west, so that its fall was not directly opposed to the weight of the transformer. At the time of the trial, the south pole leaned toward the building, so that the point of attachment of the primary conductor was 3.7 feet east of a vertical plane from the bottom of the pole. As a result, the clearance of the uninsulated primary wire at the south end where Johnson was found lying on his back was 20.42 feet vertically or 1.64 feet (or approximately 19-3/4 inches) horizontally. Appellant's Director of Distribution Plant Department said that the pole would probably not have been leaning when installed, and that if it had been in an erect position, the horizontal clearance would have been the same at both locations. He admitted that if a ladder 15 inches wide were turned perpendicular to the wire, and flush with the edge of the roof, only five inches clearance would be left. Of course, the clearance would have been much greater but for the slant of the pole. It was much greater at the north end. As one moved the ladder extended vertically the clearance of the uninsulated wire diminished at a rate that was significant but not necessarily obvious to one carrying a ladder such as that Johnson had and endeavoring to hold it in a vertical position while moving it. It is hardly necessary to say that the use of such ladders on the church roof should have been foreseen.

We have consistently held that persons or companies supplying electrical energy to the public must exercise ordinary care in the construction of service lines, to make inspections at reasonable times to see that the equipment is kept in reasonably safe condition, and to diligently discover and repair defects. *Brakensiek* v. *Nickles,* 216 Ark. 889, 227 S.W. 2d 948 (1950); *Arkansas Power and Light Co.* v. *Bollen,* 199 Ark. 566, 134 S.W. 2d 585 (1939); *Arkansas General Utilities Co.* v. *Shipman,* 188 Ark. 580, 67 S.W. 2d 178 (1934). In view of the fact that the leaning pole allowed a clearance of only 1.64 feet between the non-insulated power line and the roof, it was reasonable for the jury to conclude that the appellant had failed in its duty to inspect and repair defects, or failed to maintain safety standards which might have required insulation or the wire or moving it.

In the case of *Futrell* v. *Arkansas-Missouri Power Corp.,* 8 Cir., 104 F. 2d 752, 754, the court said:

"(1) It is elementary that in considering a motion to direct a verdict the testimony and all inferences that reasonably may be drawn therefrom must be accepted in the light most favorable to the plaintiff." *Adams* v. *Barron G. Collier, Inc.,* 8 Cir., 73 F. 2d 975.

"(2) It likewise is elementary that an issue of negligence generally is a question for the jury and only where all reasonable minds must reach the same conclusion from the facts does it become one of law for the Court and justify the direction of a verdict." *Glynn* v. *Krippner,* 8 Cir. 60 F. 2d 406; *May Department Stores Co.* v. *Bell,* 8 Cir., 61 F. 2d 830.

"(3) An electric company, because of the very nature of its business, is required to use a high degree of care in the erection, maintenance, operation and inspection of its plant and equipment used in the generation and transmission of electricity for the protection of those likely to come in contact therewith." *Dierks Lumber and Coal Co.* v. *Brown,* 8 Cir. 19 F. 2d 732; *Arkansas Light & Power Co.* v. *Cullen,* 167 Ark. 379, 268 S.W. 12; *Arkansas General Utilities Co.* v. *Shipman,* 188 Ark. 580, 67 S.W. 2d 178.

In the case of *Arkansas Power nnd Light Co.* v. *Hoover,* 182 Ark. 1065, 34 S.W. 2d 464, 469, this Court said:

"Moreover, this instruction was erroneous and should not have been given. We have repeatedly held that it was the duty of the company to keep its appliances in safe condition, and that either the wires must be kept insulated, or must be so located as to be, comparatively speaking, harmless. If the company does not choose to properly insulate a deadly wire of its maintenance, it must place the same underground, at a high altitude, or at some inaccessible place.

"We said in a recent case: 'The authorities appear to be unanimous in holding that there is no such duty, (to insulate all wires) but the cases do hold, as we understand them, that this duty must be performed, or other sufficient safety methods employed to prevent

contact with wires conveying the current at such places as danger of contact may reasonably be anticipated.' *Arkansas Power and Light Co.* v. *Cates,* 180 Ark. 1003, 24 S.W. 2d 846, 848." *McGowan,* 296 S.W. 2d at 426.

Since the reviewing court is bound to examine the evidence in the light most favorable to the appellee, *Jones* v. *American Pioneer Life Insurance Co.,* 255 Ark. 474, 500 S.W. 2d 748 (1973), and bound to sustain the jury verdict if there is any substantial evidence to support it, *Black* v. *Johnson,* 252 Ark. 889, 481 S.W. 2d 701 (1972) and *Arkansas General Utilities Co.* v. *Shipman,* supra, we must affirm the jury's finding of appellant's negligence. This conclusion is further supported by our recent statement in *Woodruff Electric Cooperative Corp.* v. *Daniel,* 251 Ark. 468, 472 S.W. 2d 919 (1971):

> "We have long recognized the rule that the very nature of the business of an electric company requires it to use a high degree of care in the erection, maintenance, operation, and inspection of its equipment which is used in the transmission of its electric power, so as to prevent injury to one likely to come in contact with the power line." *Arkansas Power and Light Co.* v. *McGowan,* 227 Ark. 55, 296 S.W. 2d 420 (1956).

In *Arkansas Power and Light Co.* v. *Cates,* 180 Ark. 1003, 24 S.W. 2d 846 (1930) we recognized that:

> "The duty of an electric company in reference to keeping its appliances in safe condition is a continuing one. Not only must it exercise a high degree of care in the original selection and installation of its electric apparatus, but thereafter it must use commensurate care to keep the same in a proper state of repair. The obligation of repairing defects does not mean merely that the company is required to remedy such defective conditions as are brought to its actual knowledge. The company is required to use active diligence to discover defects in its system. In other words, an electric company is bound to exercise due care in the inspection of its poles, wires, transformers and other appliances."

Appellant argues in the alternative that since the

decedent's contributory negligence exceeds its own negligence, the appellee is barred from recovery by our comparative negligence statute. This theory is based upon two points. The first is that the decedent was charged with knowledge of the dangerous qualities of electricity and as the deceased had previously worked on the same building, his lack of attention must have been the cause of his death. The second point raised by appellant is based on the blood alcohol content of the decedent's body which appellant argues is proof that the deceased had been drinking on the morning of the accident. There is also evidence that Johnson's appearance was normal when he was at work on the morning of his death and testimony by his wife tending to prove that he had consumed no alcohol after he had drunk some beer before retiring on the preceding night.

The question of the contributory negligence of the deceased was clearly one for the jury's determination in this case. In *Arkansas-Missouri Power Co.* v. *Davis,* 222 Ark. 686, 262 S.W. 2d 916, 919 (1953), a case similar on its facts, we stated:

> "We think the testimony of Harvill and Zander was sufficient to take the case to the jury on the question of whether the defendant power company was negligent in permitting the electric line to remain within about 4 feet of the signboard after the construction of the board. The testimony of these two witnesses is one of the distinguishing features between this case and the case of *Arkansas Power and Light Co.* v. *Lum,* 222 Ark. 678, 262 S.W. 2d 920. It might be asked, how can it be said that the power company should have anticipated the very thing that did happen, but that the injured party be relieved from any duty to foresee what might happen even though he realized the dangerous qualities of electricity. The answer is that the questions of negligence and contributory negligence were peculiarly within the province of the jury to decide, there being sufficient evidence to justify the submission of both issues."

In *Arkansas Power and Light Co.* v. *McGowan,* supra, which involved an electrocution caused by a ladder coming into contact with the electrical wire, we also held the question of contributory negligence to be before the jury. We cannot say that

Johnson's negligence was as great or greater than that of appellant as a matter of law. The jury was instructed as to assumption of risk and comparative negligence. An appropriate instruction on the question of intoxication and its bearing on the question of negligence was also given. Therefore, this issue was properly submitted to the jury in the case at bar. There is sufficient evidence to support the jury's determination. This verdict must be upheld.

Affirmed.

Roy, J., not participating.