Nilsa MARTINEZ DE JESUS,
et al. Plaintiffs

v.

PUERTO RICO ELECTRIC POWER
AUTHORITY, et al. Defendants

No. CIV. 00–1715(SEC).

United States District Court,
D. Puerto Rico.

March 24, 2003.

Jorge M. Izquierdo–San Miguel, Esq., San Juan, for Plaintiffs.

Andres Guillemard–Noble, Esq., Nackman Guillermard & Rebollo, Edna Marie Rios–González, Esq., Jorge R. Ruiz–Pabón, San Juan, Tomás E. Vivoni, Esq., San

German, Jeffrey M. Williams–English, Esq., Indiano & Williams, PSC, Hato Rey, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendants Puerto Rico Electric Power Authority (PREPA) and Genesis Insurance Company's motion for summary judgment (**Docket # 42**). Having reviewed the motion, as well as Plaintiffs' opposition (**Docket # 48**), and Defendants' reply and supplementary motion for summary judgment (**Docket ## 58 and 68**), the Court finds that there are issues still left to be resolved by a jury, concerning Defendant PREPA's alleged negligent behavior. Accordingly, the motion will be **DENIED.**

### Factual Background

On October 13, 1995, Francisco Márquez Santana and his father Francisco Gómez Márquez were painting the walls of the Instituto de Banca Building that faces the Muñoz Rivera Avenue in Hato Rey. Francisco Gómez Márquez was using a painting rod and accidentally came into contact with the live electrical cable nearest to the eave of the building. At that point, his son, Gómez Santana, attempted to save his life. Unfortunately, as a result of his daring and unselfish act, Gómez Santana received an electrical shock that killed him instantly. Gómez Márquez died about two months after the accident as a result of the burns received.

Apparently, the decedents were standing on the eave of the building at the time of the accident. The record reflects that there were four parallel electrical cables all running at the same height, but progressively further away on a horizontal plane from the edge of the eave of the building of the Instituto de Banca. The first one was a neutral cable. The second

electrical cable, then, was the live electrical cable closest to the building. The decedent apparently came in contact with this second cable, causing the accident. This, and the other two cables beyond carried 4.2 kv.

Because electrical cables can be dangerous, PREPA is required by regulations to maintain a minimum distance from a building to the first electrical cable. This distance is called horizontal clearance. The objective of the horizontal clearance is to provide safety to people and objects.

Defendant PREPA claims that it is not liable for the deaths of Francisco Gómez Márquez and his son Francisco Gómez Santana, because, allegedly, its lines were in compliance with all clearances established by the National Electric Safety Code. On the other hand, Plaintiffs claim that PREPA's own manuals and regulations required PREPA, under the applicable circumstances of this case, to at least observe a horizontal clearance of eight (8) feet from the building of the Instituto de Banca to the nearest electrical line. Generally, the distance between two electrical lines that are parallel to each other and that are at the same height, is around two (2) feet. Plaintiffs allege that the decedents came into contact with the second electrical line, which is the nearest live electrical cable from the building. Thus, the distance from the eave of the building to the second electrical line should have been around ten (10) feet, had PREPA complied with the eight (8) foot clearance regulation. Since the painting rod used by the decedents was approximately nine (9) feet and six (6) inches in length, the Plaintiffs conclude that the accident would not have occurred had PREPA complied with its own manuals because the painting rod would not have reached the first live electrical cable. However, the actual distance from the eave of the building to the near-

est electrical line was only three (3) feet and two (2) inches. Thus, Plaintiffs argue, PREPA did not comply with its own safety regulations, and should be held liable, because if it had complied with its own safety regulations, the accident would not have occurred. Finally, Plaintiffs argue that, even if PREPA had complied with the applicable regulations, it did not act as a prudent person in accordance with Article 1802 of the Puerto Rico Civil Code.

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992); *See also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Muñoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one

that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." 10A Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martínez v. Colón*, 54 F.3d 980, 983–984 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case", *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994); **the nonmovant has a "corresponding obligation to offer the court**

more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America*, 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States*, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Muñoz*, 896 F.2d at 8, *quoting Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

### Applicable Law and Analysis

■ Most of the discussion in the parties' briefs revolves around the issue of which regulation was applicable to the electrical cables involved in this accident. PREPA argues that it was only bound by the 1948 National Electric Safety Code, while Plaintiffs contend that PREPA needed to comply with their own stricter codes and regulations. In fact, Defendants have even requested that this Court grant them an opportunity to make oral arguments regarding this issue so as to better illustrate the interplay between these different regulations. This Court has denied said request because, at the end of the day, the Court understands that this issue is not dispositive of this case as a matter of law.

■ Even were PREPA correct in stating that the applicable clearance was only three (3) feet, the heart of the controversy remains whether PREPA **acted as a prudent person under Article 1802 of the** **Puerto Rico Civil Code.** This complaint is grounded, not on the clearance requirements established by the cited regulations, but on the tort responsibility established by Article 1802. Based on said article, the Supreme Court of Puerto Rico has repeatedly recognized that PREPA, as an entity that produces and distributes electricity, has the duty to exercise the highest degree of care, due to the inherently dangerous nature of the product that it markets. *Torres Solís v. A.E.E.*, 136 D.P.R. 302, 310 (1994); *Méndez Purcell v. A.F.F.*, 110 D.P.R. 130, 134 (1980); *Burgos Quiñones v. A.F.F.*, 90 D.P.R. 613, 619 (1964); *Ramos v. A.F.F.*, 86 D.P.R. 603, 609 (1962). PREPA's elevated duty of care covers the installation, maintenance and operation of its power generating plants. *Ramos*, 86 D.P.R. at 609. In addition, PREPA is also obliged to carry out adequate inspections of its electrical units in order to discover and detect defects and **dangerous conditions that could place the public's safety in jeopardy.** *Id.*

PREPA alleges that these electrical lines were originally installed in 1959, and that the applicable code only required a minimal horizontal clearance of three (3) feet. Because the first cable was 38 inches from the eave of the building, PREPA asserts that it complied with the applicable regulations for this particular case. Even assuming that PREPA complied with the allegedly applicable regulation, this is not enough for the Court to conclude, as a matter of law, that PREPA is not liable. In fact, whether Defendant PREPA complied or not with the applicable regulations does not necessarily mean that it acted as a prudent person would have under Article 1802. PREPA's own expert stated in his deposition that the National Electric Safety Code merely establishes minimum clearances, and that those responsible for installing electrical lines could install them

over the minimum distances. Therefore, the question that must be addressed is whether PREPA acted prudently by never increasing the clearances during the period of forty years since its original installation. The Court understands that this is a matter for the jury to decide since **reasonable juries** could draw different inferences from these facts. We believe that this is not a case where the compliance with an outdated Code would establish, **as a matter of law**, that PREPA was not negligent.

■ This fact becomes especially poignant when we consider that even the National Electric Safety Code, in which PREPA relies to allege that it has no responsibility, has been modified because it is now considered that horizontal clearances of only three (3) feet are too dangerous for comfort. In the 1980s, the National Electric Safety Code increased the horizontal clearance to eight (8) feet. The reason why the Code more than doubled the minimum horizontal clearance responds in part, most probably, to the tragic history of electrical accidents, such as the one before us. The fact that a three (3) foot clearance was adequate in 1959 does not necessarily mean that PREPA was not negligent in failing to reevaluate that clearance over a forty year period. In fact, in *Méndez Purcell*, 110 D.P.R. at 133 n. 4, the Supreme Court of Puerto Rico imposed liability on PREPA's predecessor for failing to comply with adequate clearances, **even though originally the cables had in fact been installed at the required height** during the development of the urbanization and had only grown too short after the terrain had been leveled. **PREPA's duty of care is a continuing duty to make sure that their installations meet the community standards for public safety.**

The same continuing duty of care has been imposed on power authorities in Louisiana, the U.S. jurisdiction most akin to Puerto Rico's civil law system. *See Aucoin v. Louisiana Power & Light Co.*, 490 So.2d 1088 (La.Ct.App.1986). Furthermore, the Louisiana courts have faced the same dilemma before us today, and have held, as we do today, that compliance with the National Electric Safety Code is not dispositive as to the issue of negligence. *Brock v. New Orleans Public Service, Inc.*, 433 So.2d 1083 (La.Ct.App.1983). The decision whether such compliance is enough to satisfy the applicable standard of care rests with the jury. *Id.*

■ In fact, our holding today seems to be unanimously backed by courts in all other U.S. jurisdictions. In general, the Restatement (Second) of Torts states that "[c]ompliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions." Restatement (Second) of Torts § 288C. In particular, the Court has found that at least fifteen (15) other U.S. jurisdictions have already tackled the specific issue of whether compliance with the National Electric Safety Code entitles a defendant utility to judgment as a matter of law in its favor. The courts have unanimously held, in agreement with the Louisiana courts, that it does not. Again, the decision whether such compliance is enough to satisfy the applicable standard of care rests with the jury. *See Arkansas Power & Light Co. v. Johnson*, 260 Ark. 237, 538 S.W.2d 541 (1976); *Schultz v. Consumers Power Company*, 443 Mich. 445, 506 N.W.2d 175 (1993); *Guess v. Light, Gas & Water Division of the City of Memphis*, 55 Tenn.App. 558, 403 S.W.2d 115 (1965); *Cronk v. Iowa Power & Light Co.*, 258 Iowa 603, 138 N.W.2d 843 (Iowa 1965); *Rice v. Florida Power & Light Co.*, 363 So.2d 834 (Fla.Dist.Ct.App.1978); *Yampa Valley Electric Assoc., Inc. v. Te-*

*lecky,* 862 P.2d 252 (Colo.1993); *Miner v. Long Island Lighting Company,* 40 N.Y.2d 372, 386 N.Y.S.2d 842, 353 N.E.2d 805 (1976); *Black v. Public Service Electric & Gas Co.,* 56 N.J. 63, 265 A.2d 129 (1970); *Cerretti v. Flint Hills Rural Electric Coop. Assoc.,* 251 Kan. 347, 837 P.2d 330 (1992); *City of Brady, Texas v. Finklea,* 400 F.2d 352 (5th Cir.1968); *Grabill v. Worthington Industries, Inc.,* 98 Ohio App.3d 739, 649 N.E.2d 874 (1994); *Sulpher Springs Valley Electric Coop., Inc. v. Verdugo,* 14 Ariz.App. 141, 481 P.2d 511 (1971); *Johnson v. Monongahela Power Co.,* 146 W.Va. 900, 123 S.E.2d 81 (1961); *Elliott v. Black River Electric Coop.,* 233 S.C. 233, 104 S.E.2d 357 (1958); *Mississippi Power & Light Co. v. Walters,* 248 Miss. 206, 158 So.2d 2 (1963).

On the other hand, we have only found two cases which could possibly be construed to shed some hope to Defendants' position. Two jurisdictions have created a rebuttable presumption that a defendant utility has met the applicable standard of care when it proves compliance with the National Electric Safety Code. *Godesky v. Provo City Corp.,* 690 P.2d 541 (Utah 1984) and *Folden v. Robinson,* 58 Wash.2d 760, 364 P.2d 924 (1961) (en banc). However, these presumptions were expressly created by statute by the legislatures of Utah and Washington. No such statutory rule of evidence has been cited by the parties as authority in this case.

Under these circumstances, we have chosen to follow the previously cited unanimous line of precedent. We will not promulgate an inflexible standard of care which does not adjust itself to the sensibilities of the times. And the Puerto Rican jurisprudence interpreting Article 1802 would not allow us to do so, even if we had such an inclination. A reasonable person lives in its own time and place, tempered by the inescapable and indomitable whim of context. Prudence evolves, and so does

the standard of care to be exercised by PREPA. The precise limits of this standard remain to be drawn by a reasonable jury in its wisdom and practicality. They are the ones to determine, in a case such as this one, whether three feet were still enough to satisfy a prudent person. They are the ones who should determine whether the nearest live electrical cable should have been insulated, exhausting all the technological advancements available in this day and age. Although there are cases where the courts must draw thresholds as to what constitutes negligence as a matter of law, we find that this is not one of those situations, based on the evidence presented by the parties so far. Therefore, Defendants' motion is **DENIED.**

**Conclusion**

For all the reasons discussed above, we find that there are still issues in this case which need to be presented to a jury. Accordingly, Defendants' motion is **DENIED.** The parties are **ORDERED** to file their Joint Proposed Pretrial Order **by April 20, 2003.**

**SO ORDERED.**